135    483
148    38

135       483
35 SC ²569

## COMMONWEALTH v. WESLEY ALLEN.

APPEAL BY DEFENDANT FROM THE COURT OF OYER AND
TERMINER OF POTTER COUNTY.

Argued May 5, 1890—Decided June 2, 1890.
[To be reported.]

1. A motion for a change of the venue in a criminal case, under the act
of March 18, 1875, P. L. 30, is addressed to the sound discretion of the
trial court, and, when no abuse of discretion appears, a refusal to grant
such an application will not be reviewed and reversed by the Supreme
Court.

(a) The act of May 19, 1887, P. L. 128, provides that the carnal knowl-
edge of a woman child under sixteen, by a person over that age, with
or without her consent, shall be adjudged felonious rape, but that a
defendant charged with the offence shall be convicted of fornication
only, if the jury find that such child was not of good repute and con-
sented to the carnal knowledge:

2. It is not necessary for the commonwealth, under this act, to show af-
firmatively the good repute of the child, with the carnal knowledge and
abuse of whom the defendant is charged: the law presumes her repu-
tation to be good until it is attacked, and if it is bad, that is a matter of
defence, to be shown by the defendant.

3. Under said act, a defendant, proved to have been an adult, may be
convicted of the felonious carnal knowledge of a female infant, with
her consent, upon an indictment averring that he was "a married man,"
although the rape is charged to have been forcible and against the will
of the female and the defendant's age is not averred.

4. Upon the trial of a defendant charged with such an offence, the com-
monwealth may show the result of a medical examination of the female,
in corroboration of her testimony, although the examination was not

Statement of Facts.

made until more than a year after the date of the alleged offence, the effect of this delay upon the force of the evidence being for the jury.

5. An offer to prove by the defendant that, as soon as he heard that he had been charged with the offence, he took the girl, then living in his house, to a physician to have her examined, but that " the prosecution " refused to permit the examination, and he requested " the prosecution " to have her examined, and " they " refused, is inadmissible.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 423 January Term 1889, Sup. Ct.; court below, No. 1 September Term 1888, O. & T.

On June 11, 1888, the grand jury returned as a true bill an indictment charging that on April 1, 1888, Wesley Allen, a married man having a lawful wife, made an assault upon one Myra Lebar, a woman child under the age of sixteen years, and her did feloniously, violently and unlawfully ravish, and carnally know and abuse, forcibly and against her will, etc. The indictment was certified into the Court of Oyer and Terminer for trial.

On September 19, 1888, the defendant was arraigned and pleaded not guilty. A jury was thereupon empaneled and sworn, who, after a trial of the case, were unable to agree and for that reason were discharged.

On March 5, 1889, the case was called for trial a second time. The regular panel of jurors having been exhausted without obtaining a full jury, the defendant moved the court for a change of venue, supporting the motion with an affidavit made by three of his counsel stating that, by recent investigations respecting the state of public opinion in reference to the case, they were satisfied that a fair trial could not be had in Potter county.

By the court: Motion overruled.[1]

The panel of jurors to try the case was then completed by the calling in of talesmen, and the trial proceeded.

The testimony for the commonwealth tended to prove that when she was about ten years of age, Myra Lebar and her brother George were taken into the family of the defendant to live; that when she was thirteen years old, and the defendant a man in middle life, twice in the month of September, 1887,

and once in April, 1888, during absences of his wife from home, the defendant had carnal connection with Myra Lebar in his own house; that while the girl did not attempt to run away from him or make any forcible resistance, and did not make any loud outcry, she protested against his acts; that within a few hours after the first commissions of the offence she complained of it to neighbors, and that on the third occasion a witness coming to the house immediately after its perpetration found her in tears.

The commonwealth offered to prove by Dr. Frank Buck " that the witness made an examination of Myra Lebar, upon whom it is alleged the rape in this case was committed, last evening, for the purpose of showing that she is at present in the physical condition she would be, had the connection taken place by the defendant to which she swears; to be followed by the testimony of Myra Lebar that no connection has taken place between her and any other person than the defendant since the connection took place between her and the defendant."

Defendant's counsel object " for the reason that the time of the examination is too remote from the period in which the alleged connection with the defendant is claimed to have taken place, and is incompetent and irrelevant; and this examination would not be evidence to show that any connection took place at the time the witness, Myra Lebar, testified that it did."

By the court: Objection overruled, evidence admitted; exception.[8]

The testimony of the witness supported the offer, and its admission was followed by the testimony of Myra Lebar, as proposed, admitted under objection and exception.[10]

The defendant, testifying for himself, denied that he at any time had committed the offence alleged. While upon the stand, his counsel asked him the following question:

Q. Did you or did you not, what is the fact, as soon as you heard that it had been charged that you had had connection with this girl, did you take this girl to Dr. Meine, a physician, to have her examined to see whether any sexual connection had been had with her previous to that time? and did the prosecution in this case refuse to permit her to be examined at and about that time?

Charge of Court below.

Objected to as incompetent.

By the court: Objection sustained; exception.[11]

The testimony of other witnesses called for the defendant tended to rebut parts of that given for the commonwealth by Myra Lebar, and to show that her accusations against him were made at the instigation of others.

At the close of the testimony, the court, MORRISON, J., charged the jury in part as follows:

The defendant, Wesley Allen, is upon trial charged with the crime of rape upon the person of Myra Lebar, a female child alleged to have been thirteen years of age at the time the rape was committed.

[Rape has been defined to be " the unlawful carnal knowledge of a woman forcibly and against her will;" but by the statute of May 19, 1887, the unlawful, carnal knowledge of a female child under sixteen years of age, by a man above that age, constitutes the crime of rape, whether she consents or not, unless she both consent and is of bad repute. Under this statute, it is rape to carnally know a female child under sixteen years of age, unless the jury find from the evidence that she both consented and was of bad repute. We instruct you that there is no evidence from which you can find that Myra Lebar both consented and was of bad repute; therefore, you will either find the defendant guilty in manner and form as he stands indicted, or you will find him not guilty, as you may conclude the facts to be under the evidence in the case.] [2]

At this point, we will read so much of the statute of May 19, 1887, as is applicable to this case. . . . . .

[This statute makes a very radical change in the law in regard to what constitutes rape. Prior to this, it would have been rape to have carnal intercourse with a female of the age of this one, provided she had consented. This act has changed the law, but with that the court and jury have nothing to do, except to enforce the law in proper cases; and, whether the policy of the legislature in enacting this law, making it a felony for a man to have carnal intercourse with a female under sixteen years of age, with or without her consent, is a wise statute, we have nothing to do with that, and we do not intimate to you whether we think it is wise or unwise. You will take

Charge of Court below.

this case and examine the evidence, and if you find that the evidence in this case comes within this statute, you will do your duty regardless of whether you approve of the law and the justice of it or not.] [3]

We have been asked by the counsel for the defendant to answer certain points in writing:

1. That, in this case, there being no evidence of the good repute of the female upon whom the offence is claimed to have been committed, and the evidence not being such as would have justified a conviction of rape, previous to the act of May 19, 1887, there can be no conviction of rape in this case.

Answer: This is answered in the negative. The commonwealth is not required under this statute to prove the good repute of the girl.[7]

2. That the fact that the commonwealth did not, in this case, produce any evidence of a medical examination of the female upon whom the offence is claimed to have been committed, made soon after the time when it is alleged it was committed, is a circumstance in favor of the defendant, that the jury may take into consideration in this case.

Answer: This point is answered in the affirmative, but it is only a circumstance to be considered with the other evidence. It is by no means conclusive. An examination, made soon after the alleged rape, would have been more satisfactory than one made long after. We know of no rule of law requiring the commonwealth to have such an examination made, but it would have been prudent to have had such an examination made as soon after the alleged crime as practicable, and if made, the result should have been proven before you by the commonwealth. In this case, no examination was made until the present week, and you have the testimony of Dr. Buck as to that examination, which is for your consideration. . . . .

—After reviewing the testimony, and instructing the jury respecting their duty to give the defendant the benefit of any reasonable doubt they might have as to his guilt, the court continued:

[We instruct you that there is competent evidence in the case, which if believed by you proves the commission of the offence charged in the indictment by the defendant.] [5] But the credibility of all the witnesses who have testified in the

,case is wholly for you.    We do not intend to intimate to you our view of the credibility of any witness in the case.    [If you find that Myra Lebar is a female child under the age of sixteen years, and that the defendant carnally knew her in September or April, as she detailed in your hearing, or that he knew her at any one time or place, as detailed by herself and her brother George, your verdict should be guilty.] [4] . . . . .

: The jury returned a verdict that the defendant was guilty. A rule for a new trial having been discharged, the defendant was sentenced to pay a fine of $200, and to undergo imprisonment in the penitentiary for six years and four months.    Thereupon, the defendant took this appeal, assigning for error:

1. The refusal of the defendant's motion.[1]

2–5. The portions of the charge embraced in [ ] [2 to 5]

7. The answer to the defendant's point.[7]

8, 10. The admission of the commonwealth's offers.[8] [10]

11. The refusal of the defendant's offer.[11]

*Mr. Sheridan Gorton* (with him *Mr. Isaac Benson, Mr. H. C. Dornan* and *Mr. S. W. Smith*), for the appellant:

1. The court should have granted a change of venue, the case having been brought fully and squarely within § 1, act of March 18, 1875, P. L. 30, providing for such a change " when, upon the trial of any criminal case, an unsuccessful effort has been made to procure and empanel a jury for the trial of the defendant, and it shall be made to appear to the court, by written affidavit of some credible witness, that a fair trial cannot be had."    It may be contended for the commonwealth that the use of the word "may," in the first section, and the language used in the second section of that act, put the whole matter of changing the venue in a criminal case within the discretion of the trial judge.    But such a construction would also enable the judge to try a case in which he was a relative of one of the parties, or an important witness, etc.    There is a discretion under sub-section second, which provides that certain things shall be made to appear " to the satisfaction of the court," but nothing is left to discretion by the sub-section we have quoted as applying to this case, and the others like it. Even, however, if the act be construed to give a discretion, an

unreasonable exercise of it, such as in the present instance, should be reviewed.

2. There could be no legal conviction under this indictment for the offence of carnal knowledge, by a person of the age of sixteen years and upwards, of a woman child under the age of sixteen years, created by the act of May 19, 1887. P. L. 128. As the statute prescribes the essential ingredients of the offence, the averments of the indictment must specially bring the defendant within all the material words of the act, and nothing can be taken by intendment: Wharton Cr. Pl., § 220. The description of the offence contained in the statute must be pursued in the indictment: Respublica v. Tryer, 3 Y. 451; Douglass v. Commonwealth, 8 W. 535; Updegraff v. Commonwealth, 6 S. & R. 5. The age of the defendant being an essential and affirmative ingredient of the offence created by the act of 1887, the omission to aver that the defendant was over the age of sixteen years, was fatal: Commonwealth v. Clark, 2 Ashm. 105; 2 Chitty Cr. Law, 231. Nor was the court correct in charging that the defendant could be convicted under this indictment, which charged a rape in its ordinary acceptation, of the statutory offence of carnal knowledge with the consent of the female; Bishop Stat. Cr., § 486; Green v. State, 50 Ind. 26; Gear v. State, 50 Ind. 267; Vasser v. State, 55 Ala. 264.

3. The binding instructions complained of in the second specification were error. The testimony for the commonwealth did not show any duress, or threats, or putting in fear, so as to deter the girl from resistance; and, although she may not actually have assented, mere passiveness, or the absence of assent on her part, would not be sufficient to constitute the crime of rape. A mixed case will not do; the connection must be absolutely against her will: Commonwealth v. Childs, 2 Pittsb. 397; People v. Abbott, 19 Wend. 192. Again; the act of May 19, 1887, construed as a whole, as every statute must be, requires, in order that there may be a conviction of the offence it creates, that the female shall be of good repute. Therefore, it was incumbent on the commonwealth to prove the good repute of this girl, that being an essential ingredient of the offence: Oliver v. Commonwealth, 101 Pa. 215. The ordinary presumption of good reputation was not sufficient. But even if that presumption applied, it was a question for the jury to decide

Arguments.

whether a girl of the age of this one who would use the vulgar language which she is shown to have used, was of good repute or not, especially when taken into consideration with her acts at the time of the alleged connection.

4. The jury had a right, if they found that the girl was not of good repute, and that the carnal knowledge was with her consent, to convict of fornication only; but the instructions of the court tended to prevent this, and therefore they impinged too strongly on the province of the jury: Lane v. Commonwealth, 59 Pa. 376. The testimony of Dr. Buck should not have been admitted, as the examination was not made within a reasonable time. On account of the great probability that the conditions disclosed by an examination, made at such a remote period, may have arisen from fraudulent or natural causes, or from intercourse with others than the defendant, the testimony was more likely to lead to erroneous results than to correct ones, and its admission would be a dangerous precedent. The offer of the defendant to show that the prosecution prevented an examination at or about the time when it was alleged that the girl had been outraged was competent, on the principle that the suppression of evidence raises a presumption adverse to the party suppressing it, and also to rebut or weaken the effect of the testimony concerning the examination by Dr. Buck.

*Mr. C. L. Peck* and *Mr. M. F. Elliott* (with them *Mr. H. A. Scoville*, District Attorney), for the appellee:

1. A change of venue under the act of March 18, 1875, P. L. 30, is clearly a matter of discretion, and the exercise of discretion in granting or refusing it is not reviewable by the Supreme Court: Newlin's Petition, 123 Pa. 541. The act of May 19, 1887, P. L. 128, does not create a new offence, but simply defines the offence of rape, changing the age of consent and some of the other boundaries of the crime, without creating any new degrees of it punishable by different penalties. It leaves the one crime, rape, and prescribes a single penalty. Over-nice exceptions are not encouraged when life is not at stake, and certainty to a common intent in general is all that is required: Sherban v. Commonwealth, 8 W. 212; Commonwealth v. Keenan, 67 Pa. 206; Commonwealth v. Ramsey, 1 Brewst. 422. An indictment is good, if it substantially charge the offence,

and objections to formal defects must be taken before the jury is sworn: § 11, act of March 31, 1860, P. L. 433; Commonwealth v. Jessup, 63 Pa. 34.

2. Prior to the act of 1887, carnal knowledge, forcibly and against the will, was sufficiently shown if it appeared that the person upon whom the offence was committed was under eleven years of age, as she was presumed incapable of consenting. Yet, in such case, it was never thought necessary to set forth the age, even of the girl, the word rape being sufficient: Commonwealth v. Sugland, 4 Gray 7; a fortiori, the age of the defendant need not be set out. Although it has long been the law that a boy less than fourteen years old is presumed incapable of committing the offence of rape, it has never been held necessary to aver that a defendant charged with its commission was over that age. In this indictment, however, the defendant is charged as a man. The general acceptation of that word is an adult male, and one of its recognized meanings is a male of legal age. And, moreover, he is described as a married man. If he wanted a more specific statement he could have applied for a bill of particulars: Williams v. Commonwealth, 91 Pa. 493; Commonwealth v. Hill, 2 Pears. 432. At most, there was an imperfect statement of his age, which is cured by the verdict, as it was supplied by evidence: Whart. Cr. Pr. & Pl., §§ 760, 762.

3. There was sufficient evidence to sustain a charge of rape at common law. The girl lived in the family of the defendant, was under his domination and control, in fear of his punishment, and with no friend to whom she could go for protection. The clause in the act of May 19, 1887, P. L. 128, relating to the effect of a finding by the jury that the woman child was not of good repute and consented to the intercourse, is a saving clause in the nature of a justification, and therefore bad repute is matter of defence to be proved by the defendant. And it was competent to corroborate the girl by physical evidence that her story might be true. The offer to show that an earlier examination was prevented by "the prosecution," was bad for indefiniteness, if for no other cause; it did not give the name of a single person who in any way interfered. But there is no law requiring a prosecutrix to undergo a physical examination at the instance of the defendant, and therefore her refusal to do

so, or the interposition of her friends, preventing the granting of what the defendant had no right to ask, would not be competent as matter of defence.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case discloses an amount of social and moral degradation that is not pleasant to contemplate. Its discussion will be confined within the narrowest possible bounds.

The motion to change the venue was in the sound discretion of the court below. The application was made upon the ground that a fair trial of the defendant could not be had in Potter county. The act of March 18, 1875, P. L. 30, provides that in criminal prosecutions the venue may be changed, for the causes enumerated in the act, when it "is made to appear to the satisfaction of the court" that the grounds upon which such application is made are well founded. In this case, we are bound to presume that it did not appear to the satisfaction of the court that the defendant could not have a fair trial in Potter county. For anything the record discloses, the discretion of the learned judge was properly exercised. In any event, there was no such abuse of discretion as would justify our interference. It would seriously disturb the administration of the criminal law if, by merely filing an affidavit, a defendant could have a change of venue as a matter of right.

It was alleged that there could be no conviction because there was no evidence that the child, Myra Lebar, upon whom the rape had been committed, was of good repute. There was no need for the commonwealth to prove her to be of good repute until her character had been attacked. The law presumes it to be good. If it was not, that was a matter of defence. We think this is the proper construction of the act of May 19, 1887, P. L. 128, the proviso of which is as follows: "That, upon the trial of any defendant charged with the unlawful carnal knowledge and abuse of a woman child under the age of sixteen years, if the jury shall find that such woman child was not of good repute, and that the carnal knowledge was with her consent, the defendant shall be acquitted of the felonious rape, and convicted of fornication only." A man who seeks to escape conviction for an offence of this nature, upon the ground that the female child he has abused is not of good

repute, must show it; the law will not help him out with presumptions.

We are not prepared to say that it was error to admit the evidence of Dr. Buck, referred to in the eighth assignment. It is true the medical examination was made at a very late day, and, to the extent of the delay, the force of the evidence was very much weakened. The learned judge very properly called the attention of the jury to this circumstance, in his charge.

Nor do we think there was error in the exclusion of the testimony referred to in the eleventh assignment. At the time the defendant took the child to Dr. Meine for the purpose of having a medical examination, she was under his control, living in his house. In taking her alone to a physican of his own selection, he may have been attempting to manufacture testimony for himself. The offer was also vague. It was not stated who had interposed the objection to the medical examination. The offer amounts to nothing more than that the doctor had refused to make an examination.

There is nothing in the remaining assignments which we think requires notice. The subject, as before observed, is unsavory; and we gladly end the discussion.

> The judgment is affirmed, and it is ordered that the defendant surrender himself forthwith to the custody of the sheriff of Potter county, under and in obedience to the sentence of the court below.