## Commonwealth *v.* Cleary, Appellant.

[Marked to be reported.]

*Interference with administration of the law—Taxpayers' petition—Disqualification as juror.*

After a verdict of murder in the first degree had been rendered and the case reversed by the Supreme Court, and before the second trial a petition was circulated and signed by a large number of taxpayers, residents of the county, asking the court to receive a plea of murder in the second degree on behalf of the prisoner, and setting forth that petitioners were informed as to the general line of the testimony produced and facts established in the former trial, and were of opinion that the requirements of justice would be fully satisfied by the entry of said plea and the imposition of sentence in pursuance thereof, and, further, that the general sentiment of the people of the county was opposed to incurring the expense of another trial:

*Held,* (1) that the circulation and signature of such a petition is an unusual and improper interference with the administration of the law, and is to be emphatically condemned.

(2) That any party who has signed such a petition has disqualified himself from serving as a juror at the trial of the defendant, and the court is right in dismissing him summarily.

*Change of venue—Act of March 18, 1875—Discretion of the court.*

The act of March 18, 1875, sec. 1, paragraph 4, P. L. 30, provides that " when upon a second trial of any felonious homicide, the evidence on a former trial thereof shall have been published within the county in which the same is being tried, and the regular panel of jurors shall be exhausted without obtaining a jury," the venue may be changed on application of the defendant or defendants:

*Held,* that under this act it was discretionary with the trial judge to grant or refuse the application.

Where eight impartial jurors had been obtained out of a panel of fifty-two, and the learned judge may well have believed that the remaining four could be had from the talesmen who were summoned, and they were in fact so obtained, there is nothing to indicate an abuse of discretion.

*Absent witness—Notes of testimony on previous trial—Act of May 23, 1887 —Constitutional law.*

The act of May 23, 1887, sec. 3, P. L. 158, which provides that "whenever any person has been examined as a witness, either for the commonwealth or for the defence, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectually served with a subpœna, or if he cannot be found, or if he become incompetent to testify for any legally sufficient reason properly proven, notes of his examination

shall be competent evidence upon a subsequent trial of the same criminal issue," is not in conflict either with the constitution of Pennsylvania (art. I, sec. 9), or the constitution of the United States (amendment VI).

### *Insanity—Evidence.*

On a trial for murder an offer to show that the defendant possessed a nervous temperament and was excitable and eccentric is properly excluded. It is not an offer to show insanity, nor anything from which insanity can properly be inferred.

### *Summoning of jurors—Action of sheriff.*

It is not the duty of the sheriff when summoning a juror to ask him any questions in regard to his bias or prejudice for or against the prisoner, nor whether he has any conscientious scruples against capital punishment. Such a proceeding is irregular and not to be countenanced.

But where it is plain that such conduct on the part of the sheriff did not result in any injury to the prisoner, the court will not reverse on this ground.

### *Jury—Use of intoxicating liquors.*

While there is no law which forbids the use of intoxicating liquors to jurors, even in a capital case, it is nevertheless the duty of the court, where the juror has indulged in their use, to scrutinize his conduct, and if it should appear that he has been intoxicated to any degree, a new trial should be granted.

The better rule is for the trial judge to forbid the use of liquor in the jury room, except by permission of the court, and for cause shown.

### *Murder—First and second degree—Definition.*

The definition of murder in the first and second degree: "when not committed in the perpetration of or attempt to perpetrate any one of the felonies named in the statute, the intention to kill is the essence of murder in the first degree; murder in the second degree is where a felonious and malicious homicide is committed, but without any specific intent to take life," while not as full and complete as it might have been, is not erroneous.

### *Intoxication as a defence.*

The court instructed the jury: "If, however, you find that the intoxication of the prisoner was so great as to render it impossible for him to form the willful, deliberate and premeditated intent to take the life of the deceased, the law reduces the grade of the homicide from murder in the first to murder in the second degree, and your verdict should be murder in the second degree. The mere intoxication of the prisoner will not excuse or palliate his offence, unless he was in such a state of intoxication as to be incapable of forming this deliberate and premeditated attempt. If he was, the grade of offence is reduced to murder in the second degree:"

*Held,* that this instruction was entirely accurate and as favorable to the prisoner as he had any right to expect.

Dissenting opinion filed by MR. JUSTICE STERRETT.

Argued Jan. 25, 1892. Appeal, No. 103, Jan. T., 1892, by defendant, Charles Cleary, from judgment of O. & T., Clinton Co., May T., 1889, No. 1, on verdict of murder in the first degree. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Indictment for murder.

A prior conviction of murder in the first degree having been reversed by the Supreme Court: Commonwealth v. Cleary, 135 Pa. 64; defendant was put on trial before MAYER, P. J.

W. Monroe, one of the panel, was called and examined on his voir dire as follows:

By the Clerk: Juror, look upon the prisoner, prisoner look upon the juror; challenged or not challenged?

Sworn and examined on his voir dire.

"Mr. Brungard. Q. Have you formed or expressed any opinion as to the guilt or innocence of the defendant? A. Well, yes, I signed that petition.

"By the Court: What?

"Mr. Brungard: He said he signed the petition.

"By the Court: Call another. Exception and bill sealed." [1]

The panel of jurors being exhausted, defendant petitioned for a change of venue. This the court refused, saying:

"The defendant, under the act of assembly of March 18, 1875, has applied for a change of venue, alleging as a reason for such change, that the evidence on the former trial of the cause has been published in the county, and that the regular panel of jurors has been exhausted without obtaining a jury. It is contended by defendant's counsel, that it is mandatory on the court to change the venue for the foregoing reason. That although the words used in the act of March, 1875, are that 'the venue may be changed,' yet it should be construed as must.

"In ascertaining the legislative intent, the act must be construed as a whole. The second section of the act provides that when applications for changes of venue are made the court shall be satisfied of the propriety of such change of venue, and that the causes assigned therefor are true, and are within the provisions of the first section of the act, before such change of venue shall be ordered. We are of the opinion that the powers

vested in the court to change a venue, under the act of March 18, 1875, are discretionary, and that the court are not required to grant a change of venue, unless, in the exercise of a sound discretion, they are satisfied that it would be proper to order the change, and that the causes assigned are true. In the present case, out of a panel of fifty-two jurors, eight have been selected who have stated under oath that they neither formed nor expressed an opinion as to the guilt or innocence of the defendant. The court is not satisfied of the propriety of a change of venue, and that the reasons assigned therefor are true, and the application must be refused. If we entertained the slightest doubt that the defendant could not have a fair and impartial trial, we would not hesitate for a moment to grant this application.

" Defendant excepts to the ruling of the court and a bill is sealed at his request." [2]

The defendant petitioned the court to discharge the jury from further consideration of the case, the petition being as follows: The petition of Charles Cleary, the defendant above named, respectfully shows: That during the calling of the jury the panel was exhausted, and the court thereupon ordered the sheriff to summon and return immediately from the body of the county thirty-five jurors; that in pursuance of said order the sheriff summoned said number of jurors; that when he called upon said jurors so summoned for the purpose of summoning them he inquired of them as to their qualifications—that is, whether they had signed a petition to the court asking the court to accept a plea of murder in the second degree, a copy of which petition is hereto attached, and if the said juror, when so interrogated by the sheriff, replied in the affirmative, he, the said sheriff, did not summon him. That of the jury now empaneled and trying the cause, six persons were of the number so summoned by the said order of the court. Your petitioner is informed that the said action of the sheriff was illegal, and that the said jurors were not properly and legally summoned, and therefore prays the court that the jury may be discharged from the further consideration of the cause, and he will ever pray. Petitioner further avers that the information as to the facts herein set forth was received since the adjournment of the court last evening, and that neither he

nor his counsel had any knowledge of the same before the jury were sworn.

Copy of petition appended:

To the Honorable, the Judges of the Court of Oyer and Terminer of the County of Clinton:

The petition of the undersigned, citizens of the commonwealth of Pennsylvania, residents of the said county, respectfully shows:

That we are informed as to the general line of the testimony produced and the facts established in the former trial of Charles Cleary, for the homicide of Philip Paul. And further, that the counsel for the prisoner are willing, if the court will accept it, to enter the plea of murder of the second degree, without further trial. That your petitioners are of the opinion that the requirements of justice will be fully satisfied by the entry of said plea, and the imposition of sentence in pursuance thereof. That the general sentiment of the people in the portion of the county in which we live is opposed to incurring the expense of another trial, and imposing its burden on the taxpayers of the county, while substantial justice may be reached in the manner proposed. We, therefore, pray the court to receive the plea of murder of the second degree tendered by the prisoner.

The court refused the petition. [3]

As a part of the commonwealth's case:

"The commonwealth's counsel offer the notes of evidence of Theodore McConnell taken upon the former trial, having proven that he is in the state of Oregon, and beyond the jurisdiction of this court. The record shows that he was examined at the former trial and was cross-examined by the prisoner. We make this offer under the provisions of the act of 1887, third section of the act approved the 23d day of May, 1887.

"Defendant's counsel object to the reading of the testimony as proposed by counsel for commonwealth, as in violation of section IX, article 6, of the constitution of Pennsylvania. Then we object, secondly, because the act of assembly referred to by counsel and the offer to read the testimony of the witness is contrary to article VI. of the amendment of the constitution of the United States, providing that in all criminal prosecutions the accused shall enjoy the right to be confronted by the witness against him.

" By the Court: Evidence admitted and bill sealed for the defendant." [4]

Dr. D. J. Reese, a witness for the defendant, being on the stand, defendant's counsel made the following offer:

Defendant's counsel propose to prove by this witness that he now is and for thirty years and upwards has been a practicing physician; that he attended the family of Michael Cleary, father of defendant, professionally for twenty years and upwards; that both Mr. Cleary and his wife are of excessively nervous temperament; that within the last four or five years he attended one son of said Cleary who was affected with chorea or St. Vitus dance, and one daughter who had two attacks of the same disease; that defendant is also of a like nervous temperament. That witness visited him at his father's request about three years ago, when he was under the influence of intoxicating liquors, and he found him wild and delirious, although able to walk about, strong and active. He spoke roughly to witness and seemed to want to get away from him; that witness has known defendant since he was a small boy and always found him nervous, excitable and eccentric; disposed at times to be friendly and again under like circumstances to be indifferent. That in walking up the street he would move with a proud gait and carry his head high, then suddenly stop and look about him as if surprised at something, then walk on. To be followed by evidence that insanity and a tendency towards nervous disease, or that neurosis, is hereditary in the said Cleary family, two uncles having been of weak mind and imbecile. That the natural result of the excessive use of intoxicating liquors by the defendant, as has heretofore been shown in the testimony of the witnesses, is to cause such a disturbance of his mental faculties as would render him incompetent to form a rational intent or to perpetrate a willful and premeditated killing.

Objected to. Objections sustained and bill sealed for defendant. [5]

The court, among other things, charged the jury as follows:

" Policeman Paul, in the discharge of his duty, arrested the defendant, and was conducting him to the lockup in said borough. Just as they reached the door of the lockup, Paul was

shot in the head with a pistol which Cleary had on his person when arrested, from the effects of which Paul died. [8] . . . .

" When not committed in the perpetration of, or attempt to perpetrate any one of the felonies named in the statute, the intention to kill is the essence of murder in the first degree.

'" Murder in the second degree is where a felonious and malicious homicide is committed, but without any specific intent to take life. [9] . . . .

" If, however, you find that the intoxication of the prisoner was so great as to render it impossible for him to form the willful, deliberate and premeditated intent to take the life of the deceased, the law reduces the grade of the homicide from murder in the first to murder in the second degree, and your verdict should be murder in the second degree. The mere intoxication of the prisoner will not excuse or palliate his offence, unless he was in such a state of intoxication as to be incapable of forming this deliberate and premeditated attempt. If he was, the grade of offence is reduced to murder in the second degree." [10]

Verdict of murder in the first degree.

Among the reasons filed in support of a motion for a new trial were the following :

Because the sheriff in selecting and summoning the jury under the venire awarded by the court after the panel was exhausted, inquired of the persons selected as to whether they had conscientious scruples on the subject of capital punishment, and as to whether they had signed defendant's petition to the court asking the court to accept the plea of murder in the second degree. [6]

Tenth reason. That during the progress of the trial the jurors were furnished with intoxicating liquors at the hotel where they were boarded. [7]

A new trial having been refused and judgment entered according to the verdict, defendant appealed.

*Errors assigned* were, (1) dismissing W. Monroe when called as a juror, quoting bill of exceptions ; (2) refusal of change of venue, quoting petition and opinion of the court; (3) refusal to discharge the jury, quoting petition ; (4) admission of the evidence of the witness taken on the former trial; (5) excluding defendant's offer, quoting it; (6-7) refusing a new trial

for the reasons filed; (8–10) portions of the charge above given, quoting them; (11) failure to charge that the entire evidence taken together was not sufficient to sustain a conviction of murder in the first degree.

*C. S. McCormick* and *W. C. Kress*, for appellant.—Signing the petition did not indicate such a fixed, deliberate and determined opinion as should disqualify a juror under recent rulings: Com. v. McMillan, 22 Atl. Rep. 1029; Allison v. Com., 99 Pa. 17; Curley v. Com., 84 Pa. 151; Myers v. Com., 79 Pa. 308: Clark v. Com., 123 Pa. 573; State v. Dent, 41 La. Ann. 1082; People v. Barker, 60 Mich. 277; People v. Shufelt, 61 Mich. 237; State v. Elkins, (Mo.) 14 S. W. 116; State v. Cunningham, 100 Mo. 382; Fogarty v. State, 80 Ga. 450; Rizzolo v. Com., 126 Pa. 72; Omara v. Com., 75 Pa. 424.

A judge has no right to reject a qualified juror with whom all parties are satisfied, unless for sufficient cause, and such cause should appear on the record: Welch v. Tribune Pub. Co., 83 Mich. 661; Thompson and Merriam on Juries, sec. 250.

Second assignment. Whenever the power to be exercised by the court is in the interest of public justice, although the language of the statute is merely permissive in form, yet if public as well as private interest call for its exercise, it must be considered as mandatory: Bell v. Caldwell, 107 Pa. 48; Com. v. Pittsburg, 34 Pa. 513; Mason v. Fearson, 9 How. 248; Com. v. Allen, 135 Pa. 483; St. Louis R. R. v. Teters, 68 Ill. 144; Walley's Case, 11 Nev. 260; Hines v. Lockport, 60 Barb. (N. Y.) 378.

Third and sixth assignments. The conduct of the sheriff in questioning parties before summoning them as jurors is ground for a new trial. There is no discriminating between such interferences as would be harmless or injurious: McDonald v. Shaw, 1 N. J. L. 6; State v. Johnson, 1 N. J. L. 219; Thompson and Merriam on Juries, secs. 132, 133; Clark v. Com., 123 Pa. 573; State v. Crockett, (Mo.) 6 West. 651.

Seventh assignment. In the removal of the possibility of the effects of indulgence in intoxicating liquors in the jury there is absolute safety; in permitting it there is admitted danger. Public policy and the safe administration of justice demand the removal: Com. v. Dimcy, 36 Pitts. L. J. 335; Peo-

ple v. Douglass, 4 Cowan, 33 ; Brant v. Fowler, 7 Cowan, 562 ; Ryan v. Harrow, 1 Am. Rep. 303 ; Davis v. The State, 9 Am. Rep. 760.

Eighth assignment. The court should have left it for the jury to say whether officer Paul was in the discharge of his duty or not. An arrest without proper cause was sufficient provocation to reduce the grade of the crime to murder in the second degree : Brooks v. Com., 61 Pa. 360.

Ninth assignment. The court left the jury under the impression that it made no difference how sudden or impetuous the impulse, provided the intention to take life were present, the crime would be murder in the first degree. They should have been instructed that the intention must have been deliberate and premeditated : Com. v. Drum, 58 Pa. 18.

Tenth assignment. To be guilty of murder, the person must be of sound memory and discretion, and the commonwealth must prove that he is. This condition is not present if the party is intoxicated, and by intoxication the law does not mean that the prisoner shall have drunken until he has become unconscious, before the jury can consider his condition in connection with the other evidence in the cause : Wharton, Med. Jur., sec. 215 ; Jones v. Com., 75 Pa. 408.

*John H. Orvis,* with him *A. W. Brungard,* district attorney, for appellee.—First assignment. The fact of the killing being undenied, a signer of the petition had really prejudged the only real question involved in the coming trial, and was thereby disqualified.

Second assignment. " A motion for a change of venue in a criminal case under the act of March 18, 1875, is addressed to the sound discretion of the trial court ; and when no abuse of discretion appears, a refusal to grant such an application will not be reviewed and reversed by the Supreme Court : " Com. v. Allen, 135 Pa. 483 ; Pa. Canal Co. v. P. & R. R. R., 2 Pearson, 298.

Fourth assignment. This question is no longer an open one ; that the testimony is competent, see act May 23, 1887 : Brown v. Com., 73 Pa. 321, and cases cited ; People v. Devine, 46 Cal. 45 ; Hurley v. State, 29 Ark. 17 ; Shackelford v. State, 33 Ark. 543 ; Sneed v. State, 47 Ark. 180 ; Reynolds v. U.

S., 98 U. S. 145; State v. Harmon, 27 Mo. 120; Barron v. People, 1 Comst. 386.

Seventh assignment. A verdict will not be set aside because the jury have made use of intoxicating liquors, unless it appears that it was supplied from an improper source or affected the verdict: State v. Upton, 20 Mo. 397; Rowe v. State, 11 Humph. 492; State v. Cucuel, 31 N. J. L. R. 250; Davis v. People, 19 Ill. 74; Wilson v. Abrahams, 1 Hill, 211; Wharton, Criminal Law, sec. 3320; Thompson v. Com., 8 Grat. 638; Creek v. State, 24 Ind. 154; State v. Bruce, 48 Iowa, 536; Roman v. State, 41 Wis. 312; Pope v. State, 36 Miss. 122; Russell v. State, 53 Miss. 369; Kee v. State, 28 Ark. 155; Grant v. Com., 71 Pa. 495.

This question is not properly on the record by any bill of exceptions; it was merely urged upon the court at the argument for a new trial.

Eighth assignment. "If a peace officer be killed whilst in the discharge of his duty in attempting to make an arrest, and his character is known to the prisoner, it is murder, and if there was an intent to kill, of the first degree:" Com. v. Clegget, 3 Leg. Gaz. 9.

Ninth assignment. The rule as laid down by the court in its charge in this case is sustained by abundant authority: Pa. v. McFall, Add. 257; Pa. v. Lewis, Add. 279; Com. v. Green, 1 Ash. 289; Com. v. Murray, 2 Ash. 41; Kilpatrick v. Com., 31 Pa. 198; Keenan v. Com., 44 Pa. 55; Com. v. Drum, 58 Pa. 10.

Tenth assignment. The charge of the court below on this point is sustained by Jones v. Com., 75 Pa. 403; Pa. v. Lewis, Add. 279; Com. v. Hart, 2 Brewster, 546; Keenan v. Com., 44 Pa. 55; Com. v. Crozier, 1 Brewster, 349; Com. v. Miller, 4 Phila. 195; Com. v. Perrier, 3 Phila. 229; Com. v. Dunlap, Lewis Cr. Law, 394; Com. v. Haggerty, Lewis Cr. Law, 402; Com. v. Cleary, 135 Pa. 65.

OPINION BY MR. CHIEF JUSTICE PAXSON, March 28, 1892:

The first specification alleges that the court below erred in dismissing W. Monroe, when called as a juror. When the juror was asked the usual question, whether he had formed or expressed an opinion as to the guilt or innocence of the defend-

ant, his reply was, " well, yes, I signed that petition," whereupon the learned judge below, without any further questions being asked the juror, directed another juror to be called.   To understand this question properly, it is necessary to state that the prisoner had been tried at a previous term of the court, and convicted of murder in the first degree.   Upon appeal to this court, the judgment had been reversed, and the cause sent down for a retrial.   In the meantime, a petition, of which the following is a copy, had been circulated through the county of Clinton, and signed by the juror with many others.   The petition is as follows :

" To the Honorable, the Judges of the Court of Oyer and Terminer of the County of Clinton :

" The petition of the undersigned, citizens of the commonwealth of Pennsylvania, residents of the said county, respectfully shows :

" That we are informed as to the general line of the testimony produced, and the facts established, in the former trial of Charles Cleary, for the homicide of Philip Paul.   And further, that the counsel for the prisoner are willing, if the court will accept it, to enter the plea of murder of the second degree, without further trial.   That your petitioners are of the opinion that the requirements of justice will be fully satisfied by the entry of said plea, and the imposition of sentence in pursuance thereof.   That the general sentiment of the people in the portion of the county in which we live is opposed to incurring the expense of another trial, and imposing its burden on the taxpayers of the county, while substantial justice may be reached in the manner proposed.   We, therefore, pray the court to receive the plea of murder of the second degree, tendered by the prisoner."

I have quoted this petition in full, to enable us the more emphatically to condemn this unusual and improper interference with the administration of the law.   It is not the less objectionable because its main object appears to have been to relieve the taxpayers from the expense of another trial.   Notwithstanding the prisoner had been previously convicted of murder in the first degree, and the judgment had been reversed, not upon the merits, but for an error of the judge below in his charge to the jury, the petitioners express the opinion that the require-

ments of justice will be fully satisfied by the acceptance of a plea of guilty of murder in the second degree, and so advise the court. They profess to have been fully informed as to the general line of testimony produced, and the facts established at the former trial. It was a deliberative expression of opinion on the part of the petitioners as to the merits of the case, reduced to writing, and signed by this juror. We do not think the juror, under the circumstances, should have been allowed to say that he could try the case impartially. Every man who signed that paper disqualified himself from serving as a juror in that case, and the learned judge below was entirely right in dismissing the juror in the summary manner he did. It would have been clear error to have allowed him to take his seat in the jury box.

The second specification alleges that the court erred in refusing a change of venue, applied for by the appellant after the panel of jurors was exhausted. This application was made under the act of March 18, 1875, P. L. 30, the 4th paragraph of the first section of which provides: "When upon a second trial of any felonious homicide the evidence on the former trial thereof shall have been published within the county in which the same is being tried, and the regular panel of jurors shall be exhausted without obtaining a jury," the venue may be changed on application of the defendant or defendants, etc.

The petition for the change of venue sets forth the former conviction; that the proceedings, including the evidence, were published in three of the daily papers in the county of Clinton; that a venire of sixty jurors had been summoned; that in the effort to procure an impartial jury, the panel was exhausted when only eight jurors had been called into the box, etc.

The second section of the act of 1875 provides: " All applications for changes of venue shall be made to the court in which the indictment shall be pending, in such manner as the said court shall direct, and before the jury shall be sworn therein; and if the said court shall be satisfied of the propriety of such change of venue, and that the causes assigned therefor are true, and are within the provisions of the first section of this act, it shall be ordered that the venue thereof shall be changed to some adjoining or convenient county where the causes alleged for a change do not exist."

In Com. v. Allen, 135 Pa. 483, it was held that a motion for a change of venue in a criminal case, under the act of 1875, is addressed to the sound discretion of the trial judge, and, when no abuse of discretion appears, a refusal to grant such an application will not be reviewed and reversed by the Supreme Court. It was said in the opinion of the court: " The motion to change the venue was in the sound discretion of the court below. The application was made upon the ground that a fair trial of the defendant could not be had in Potter county. The act of March 18, 1875, P. L. 30, provides that in criminal prosecutions the venue may be changed, for the causes enumerated in the act, when it ' is made to appear to the satisfaction of the court' that the grounds upon which such application is made are well founded. In this case we are bound to presume that it did not appear to the satisfaction of the court that the defendant could not have a fair trial in Potter county. For anything the record discloses, the discretion of the learned judge was properly exercised. In any event, there was no such abuse of discretion as would justify our interference. It would seriously disturb the administration of the criminal law, if, by merely filing an affidavit, a defendant could have a change of venue as a matter of right."

We see nothing in the action of the court below to indicate an abuse of discretion. Eight impartial jurors had been obtained out of a panel of fifty-two, and the learned judge may well have believed that the remaining four jurors could be had from the talesmen who were summoned. They were in fact so obtained. The plain object of the act was to empower the court to grant a change of venue in such cases, where the trial judge is convinced that an impartial jury cannot be otherwise obtained. This assignment is not sustained.

The third specification involves the same question, and does not require discussion.

The fourth specification alleges the court erred in overruling defendant's objection, and admitting the evidence of Theodore McConnell, taken on the former trial. The witness had been examined at the former trial, and was cross-examined by the prisoner. He has since removed from the state, and was beyond the reach of a subpœna. The offer was made under the provisions of the act of May 23, 1887, the third section of which

is as follows : " Whenever any person has been examined as a witness, either for the commonwealth or for the defence, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards die, or be out of the jurisdiction, so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he become incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue ; but, for the purpose of contradicting a witness, the testimony given by him in another, or in a former proceeding, may be orally proven." It was contended by appellant's counsel that this statute is in conflict with article I, § 9, of the constitution of Pennsylvania, which declares: " In all criminal prosecutions the accused hath a right to meet the witness face to face ; " and, also, with a somewhat similar provision of the constitution of the United States. We do not think the act in question violates either of the constitutions referred to. Where a witness has been examined in the presence of the accused, and the latter has had a full opportunity to cross-examine him, we think the additional requirement, that the defendant should meet his accuser face to face, is fully complied with.

Where, upon a subsequent trial, the witness is dead, or beyond the jurisdiction of the court, there seems no good reason why his testimony taken upon the former trial, and clearly proved, should not be admitted. To deny this right would, in many instances, seriously interfere with the administration of justice, if not wholly defeat it. The defendant is not injured in such case, because he has been brought face to face with the witness, and has cross-examined him when the testimony was taken. In Brown v. The Commonwealth, 73 Pa. 321, it appeared that on the preliminary hearing before the committing magistrate, the defendant and his counsel being present, a witness was examined whose testimony was taken down by defendant's counsel, and the witness having died before the trial, the notes of his evidence, proved by the counsel under oath, were offered in evidence, objected to and admitted. It was contended that, by the constitution of this state, the defendant was entitled to meet the witness face to face. It was held by

this court, in an elaborate opinion by Chief Justice READ, that the notes of the hearing before the magistrate were properly admitted. The question was so elaborately discussed in that case that no further reference to it is needed.

We do not think it was error to exclude the offer of evidence referred to in the fifth specification. The most that the offer amounted to was, that the defendant possessed a nervous temperament; that he was excitable and eccentric. It was not an offer to show insanity, nor anything from which insanity could properly be inferred.

The sixth specification alleges the court erred in refusing to grant a new trial, because the sheriff in selecting and summoning a jury, under the venire ordered by the court, after the panel was exhausted, inquired of the persons selected whether they had any conscientious scruples on the subject of capital punishment, and whether they had signed the defendant's petition to the court, asking the court to accept the plea of murder in the second degree. It may be conceded that the conduct of the sheriff in this respect was officious and unauthorized. It is not the duty of that officer, when summoning a juror, to ask him any questions in regard to his bias or prejudice for or against the prisoner, nor whether he has any conscientious scruples against capital punishment. The questions, however, were such as are usually and properly asked in court of a juror before he is brought to the book. The court below appears to have thoroughly investigated this matter, and it is apparent that no injury was done to the prisoner. There was nothing to show that any person otherwise competent as a juror was rejected by him. He omitted to summon but two persons, and it is evident that if they had been summoned, they would have been rejected as incompetent. At the same time, it is to be observed that the proceeding was irregular, and not to be countenanced. If there was any reason to believe that the prisoner had been prejudiced by it, we would reverse this judgment and order a new trial. But we ought not to interfere with the administration of the criminal law, except for substantial reasons. A verdict twice rendered ought not to be set aside for the mistake of a bungling official, which has done no harm to the defendant.

The seventh specification alleges that the court erred in re-

fusing to set aside the verdict of the jury, for the reason that, during the progress of the trial the jurors were furnished with intoxicating liquors at the hotel where they were boarded.

It is not disputed that some of the jurors, during the continuance of the trial, drank spirituous and malt liquors. But there is nothing to show that any of them, at any time during the trial, was intoxicated or visibly under the effect of liquor. This matter is very fully referred to in the opinion of the learned judge below in refusing a new trial, and the circumstances detailed under which the liquor was used. Several of the jurors appear to have taken it for medicinal purposes, and none of them to have indulged to such an extent as to interfere with the proper performance of their duty as jurors. While there is no law which forbids the use of intoxicating liquors to jurors, even in a capital case, it is nevertheless the duty of the court, where the juror has indulged in their use, to scrutinize his conduct, and if it should appear that he has been intoxicated to any degree, a new trial should be granted. We are not prepared to say, however, that a verdict should be set aside for no other reason than that a juror has taken a glass of liquor. Were we to declare such an iron-clad rule to be the law, it would only be necessary for a friendly juror to smuggle a bottle of liquor into the jury room to set aside the verdict. The better rule is for the trial judge to forbid the use of liquor in the jury room, except by permission of the court, and for cause shown. There may be instances, indeed I have known such, where its use was necessary by reason of sickness or other cause. In such cases, a physician may be called in to examine the juror, and prescribe for him.

The eighth, ninth, tenth and eleventh specifications allege error in the charge of the court. The definition of murder in the first and second degree, as contained in the ninth specification, while not as full and complete as it might have been, is not erroneous. Moreover, it is but a short extract from the general charge, in which the subject is correctly treated. The reference to intoxication in the tenth specification is entirely accurate, and as favorable to the prisoner as he had any right to expect. The learned judge could not have told the jury, with propriety, that the entire evidence, taken together, was not sufficient to sustain a verdict of murder in the first degree.

The judgment is affirmed, and it is ordered that the record be remitted to the court of oyer and terminer for the purpose of execution.

OPINION OF MR. JUSTICE STERRETT, dissenting:

It is not my purpose to do more than indicate some of the grounds on which, in my opinion, the judgment of the court below should be reversed.

The unceremonious dismissal of the juror, W. Monroe, was practically a denial of legal right, wholly unwarranted in the circumstances of the case.

For the purpose of ascertaining the qualifications, fitness, etc., of the juror, he was called and sworn on his voir dire. What then occurred is stated in the record as follows:

Quest. (By Mr. Brungard, district attorney.)  " Have you formed or expressed any opinion as to the guilt or innocence of the defendant? "

Ans. " Well, yes, I signed that petition."

By the Court: " What? "

Mr. Brungard: " He said he signed the petition."

By the Court: " Call another."

Exception and bill sealed.

It is conceded that the petition referred to was signed by the juror and about 1200 other residents of the county, and is as follows:

" To the Honorable, the Judges of the Court of Oyer and Terminer of the County of Clinton:

" The petition of the undersigned citizens of the commonwealth of Pennsylvania, residents of the said county, respectfully shows:

" That we are informed as to the general line of the testimony produced and the facts established in the former trial of Charles Cleary, for the homicide of Philip Paul.  And further, that the counsel for the prisoner are willing, if the court will accept it, to enter a plea of murder of the second degree, without further trial.  That your petitioners are of the opinion that the requirements of justice will be fully satisfied by the entry of said plea, and the imposition of sentence in pursuance thereof.  That the general sentiment of the people in the portion of the county in which we live is opposed to incurring the expense of anoth-

er trial, and imposing its burden on the taxpayers of the county, while substantial justice may be reached in the manner proposed. We therefore pray the court to receive the plea of murder of the second degree tendered by the prisoner."

There is nothing in this petition that is in the slightest degree disrespectful to the court, or that indicates any desire to improperly interfere with the due administration of justice. It is predicated of the prisoner's guilt of murder, coupled with a doubt as to whether the grade of the felony is higher than murder of the second degree. At most, it is nothing more than a prayer for a merciful disposition of a case, in which the petitioners were, at least, doubtful whether the crime was of the higher grade. It cannot therefore be doubted that the action of the court in waiving the juror aside was prompted solely by the consideration that, by merely signing the petition, he had forever disqualified himself from serving as a juror in this case, notwithstanding the commonwealth, or the defendant, or both, might be satisfied as to his competency and impartiality. If his examination on his voir dire had been permitted to proceed in the usual and orderly way, who can undertake to say that his answers to the questions that would have been propounded would not have convinced the court, as well as the parties, that he was just such a juror, and that he would have been accepted as such? The right of challenge is vested by the law, not in the court, but in the respective parties to the issue. In effect, the action of the court in this case was a usurpation of that right. The juror was not challenged by either of the parties. His examination, for the purpose of ascertaining what, if any, opinion he then entertained on the subject of capital punishment, guilt or innocence of the prisoner, etc., preliminary to exercising the right of challenge, was arrested in limine by the action of the court in curtly dismissing the juror, and ordering the clerk to call another. The prisoner was thus deprived of the legal right, which he undoubtedly had, to then and there interrogate the juror as to all matters bearing on his competency, impartiality, etc., and, after eliciting the facts, to ask the court to decide any question that might arise thereon, and have the same made a matter of record for the purpose of review in this court. It is, of course, utterly impossible for any one to say what facts would have

been established and spread upon the record, if the legal right of the defendant had not been denied. It is no answer to say that the prisoner was not, and could not, have been prejudiced by the denial of the right in question. No appellate court has a right to speculate as to what may, or may not, have been the effect of the denial of a legal right. Nor will it do to say that, because the juror appended his name to the petition, he was irrevocably disqualified, and forever disbarred from serving as such on the trial of this case. Such a proposition as that must necessarily rest upon the absurd assumption that there could be no locus penitentiæ in such a case, that the juror could not have been convinced, in the interim, that the opinion entertained when he signed the petition was erroneous, in that it was founded on a misapprehension of the facts, etc. The former judgment was reversed by this court in May, 1890. The second trial commenced nearly a year thereafter. The petition must have been signed after the first judgment was reversed, but whether immediately thereafter or not does not appear. It is quite certain, however, that the time which must have elapsed between signing the petition and examination of the juror was not so short as to preclude a change of opinion.

The facility with which signatures to petitions are procured is matter of every-day experience. If the juror had been permitted to testify to the circumstances under which his name was appended to the petition, it might have conclusively appeared that he signed at the request of some friend or neighbor, without having any knowledge of the facts stated therein, other than that communicated to him orally by others. But it is useless to speculate as to what facts might have been established if the court had not erroneously interposed and closed the door against further inquiry. It is quite sufficient, for present purposes, to know that the prisoner had a clear legal right to interrogate the juror, and that, by the action of the court, the privilege of exercising it was denied.

As already suggested, it might have been shown by examination of the juror that, for satisfactory reasons, he had discarded any opinion he entertained when the petition was signed, and was fully prepared, at time of the trial, to take his seat as a juror, hear the case, and render a verdict according to the

law as explained by the court, and the testimony as given by the witnesses, uninfluenced by any opinion he may have theretofore entertained or expressed. That is the true test; and any ruling that deprives a defendant of the opportunity of having it properly applied to any juror that may be called is error, too grave to be excused, much less sanctioned, by this court, especially in a capital case.

Another ground of reversal is refusal to change the venue.

A panel of 60 jurors was summoned, 52 of whom answered. Out of those, 8 were selected, 4 of whom were subject to peremptory challenge by the commonwealth; so that when the regular panel was exhausted only 4 jurors were absolutely selected. A special venire for 35 talesman was then ordered, and the jury was finally made up of 6 jurors from the regular panel and 6 talesmen. Before the jury was sworn, defendant petitioned the court for a change of venue, under the act of March 18, 1875, which provides that the venue may be changed, on application of defendant, in certain specified classes of cases, the fourth of which is as follows:

" 4. When, upon a second trial of any felonious homicide, the evidence on the former trial thereof shall have been published within the county in which the same has been tried, and the regular panel of jurors shall be exhausted without obtaining a jury."

The petition was under this clause, and the averments were substantially in the language thereof. As to two of the three required facts, viz., that this is the second trial, and that the regular panel was exhausted without obtaining a jury, there could be no question, because they were matters of record, of which the court is bound to take cognizance. The only remaining fact, viz., that the evidence of the former trial was published within the county, was susceptible of positive proof, and defendant averred his readiness to produce it. The court, without affording him an opportunity of doing so, but assuming the truth of all the averments necessary to bring the application within the said fourth clause, refused to allow a change of venue, holding that in either class of cases specified in the act, the court, in the exercise of its discretion, might grant or refuse any application. In that, I think, there was error. It is true the language of the second section of the act

is, "if the court shall be satisfied of the propriety of such change of venue, and that the causes assigned therefor are true, etc.;" but that language is applicable only to other clauses of the first section, in which the legislative intent to invest the court with such discretionary power is apparent. As to these, the words above quoted have full force and effect, and to them only they were intended to apply.

Assuming, in any given case, the truth of the facts specified in and required by the fourth clause to be undoubted, the legislature never intended that the court in its discretion might grant or refuse a change of venue. On the contrary, the act was intended to be mandatory, fully as much so as in a case that might be supposed of an application under the first clause grounded on the undisputed fact that the prosecutrix is the wife or daughter of the judge who by law is required to try the case. It cannot be possible that the legislature ever intended any exercise of discretion in such a case, other than in the selection of the county to which the venue should be changed.

The word "may," in statutes, is not always employed in a merely directory or permissive sense. It is often mandatory. Whenever it appears that the legislative intent was to impose a duty, and not simply a privilege or discretionary powers, the word "may" has always been construed "must" or "shall:" 14 Am. & Eng. Enc. of Law, 979, and cases there cited.

But assuming for the sake of argument, that in a case like this (fully and fairly within the fourth clause of the first section, according to the undisputed facts) the court is invested with discretionary power in the premises, I think that, in the exercise of a sound discretion, the change of venue should have been ordered. This conclusion is strengthened by what occurred in connection with summoning the talesmen.

The facts upon which the third specification of error is based, in connection with the evidence adduced in support of the motion for a new trial, disclose a proceeding that is not on the lines of orderly and well established practice, especially in capital cases. Probably it was not intended as an effort to secure the selection of talesmen predisposed in favor of the commonwealth rather than the prisoner, but it has, at least, the appearance of being too dangerously near it to justify even the tacit approbation of this or any other court.

In his opinion, denying the motion for a new trial, the learned president of the oyer and terminer says, inter alia : " The sheriff in summoning talesmen asked them these questions ;— whether they had any conscientious scruples on the subject of capital punishment ; whether they had formed or expressed an opinion as to the guilt or innocence of the prisoner, and whether they had signed the petition requesting the court to accept a plea of murder in the second degree. This was but putting questions to the juror similar to those which are authorized to be put at the examination of the juror as to his competency. But the sheriff is not the proper officer to put such questions, nor decide upon the answer, as the competency of the jurors must be determined by the court. . . . The only instruction given by the court to the sheriff was not to summon persons as jurors who had signed the petition, as all such would be rejected ; and the defendant cannot complain of this as error. As to the other questions propounded by the sheriff, he must have received his instructions from the district attorney."

The evidence, above referred to, in support of motion for new trial, shows that the district attorney did so instruct the sheriff.

It was not incumbent on the prisoner to show that he was prejudiced by what was done. It is enough to know that he might have been ; and who can tell that he was not prejudiced ? The only safe rule is to characterize all such dangerous departures from established practice as errors. In the language of the learned judge himself, in the opinion above quoted from : " It is of the first importance, in all criminal cases, but especially in a capital one, that the defendant should have a trial by a fair and impartial jury. It is a right secured to him by the Declaration of Rights, which declares that in all prosecutions by indictment or information, the accused hath a right to a trial, by an impartial jury of the vicinage."

What was done in connection with the selection of the talesmen in this case was not in that direction. It was rather the reverse.

While I am in favor of a firm, prompt and fearless administration of the criminal law, especially in the higher felonies, I am opposed to innovations which are calculated to break down

those safe guards which experience has shown to be necessary
to a fair and impartial trial. Speaking of an error into which
the court inadvertently fell on the former trial of this case,
the present Chief Justice said: " We cannot treat this as an im-
material matter which did not prejudice the defendant. It may
not have done so, but we cannot say so. The issue of life and
death is so vast, both in this world and the next, that it is our
duty to weigh every word carefully, and leave nothing to con-
jecture: " Commonwealth v. Cleary, 135 Pa. 86.

The same rule applies with even greater force to acts con-
trary to the established course of procedure in the trial of
criminal cases, and dangerous in their tendency.

For reasons above suggested, I would reverse the judgment
and order a new trial.