## Commonwealth v. Franklin

*Albert H. Heimbach,* district attorney, and *Harrington E. Adams,* Deputy Attorney General, for Commonwealth.

*Ben Branch, James J. Gallagher* and *Albert Prutzman,* for defendant.

THOMAS, P. J., December 11, 1939.—Defendant filed his petition in the above-entitled case alleging that because of undue excitement and prejudice existing against him in Carbon County and because of a combination instigated against him by influential persons he was unable to secure a fair trial in said county, and praying that a change of venue be granted.

The Commonwealth in its answer denied the allegations of petitioner and, for the reasons set forth in said answer, prayed that the petition be dismissed.

A hearing was had, and petitioner presented the testimony of numerous witnesses as to the circulation of various newspapers and a magazine in Carbon County, and also presented in evidence a voluminous record of newspaper clippings, editorials, cartoons, etc., in support of the allegations in the petition.

The Commonwealth at said hearing presented five witnesses who testified that, in their opinion, formed from the knowledge they had gained from the speech of the community, there was no reason why defendant could not secure a fair trial in Carbon County.

Argument was had before the court, and at that time the questions at issue were presented as follows:

1. Is there such undue excitement against Benjamin Franklin that a fair trial cannot be had?

2. Does there exist so great a prejudice against Benjamin Franklin that he cannot obtain a fair trial in Carbon County?

3. Is there a combination against him, instigated by influential persons, by reason of which Benjamin Franklin cannot obtain a fair trial in Carbon County?

Joan Stevens was a girl 14 years of age, residing with her parents in the Village of Nesquehoning, Mauch Chunk Township, Carbon County, Pennsylvania, and on June 5, 1939, she was shot and killed by defendant, Benjamin Franklin, a member of the Pennsylvania Motor Police. Early in October 1939, defendant was indicted by the Grand Jury of Carbon County on two indictments, one charging murder and voluntary manslaughter and the other charging involuntary manslaughter, and the trial of the cause was fixed for the second week of October 1939.

It is admitted by the Commonwealth that immediately following the occurrence of June 5, 1939, great indignation and excitement arose in Carbon County due to the immaturity of the victim and the official position of the present petitioner; that metropolitan newspapers have from the date of the occurrence written many articles, argumentative editorials, and published revolting cartoons about the case; that at least one newspaper published alleged interviews had with defendant and his counsel; that the district attorney and two other members of the Carbon County Bar, the latter being private counsel aiding in the prosecution of defendant, were candidates for public office at the time of the presentation of the petition for a change of venue; that shortly after the said date of June 5, 1939, several persons of influence organized themselves together for the purpose of promoting the "Joan Stevens Justice Fund" to aid in the prosecution of defendant; and that Mrs. Mayme Stevens, the mother

of the deceased girl, published, or aided in causing to be published, an article entitled "Why Did a Trooper Shoot My Baby?", in a magazine known as "Crime Confessions", and that such magazine made its appearance in Carbon County on or about September 21, 1939.

Under the Act of March 18, 1875, P. L. 30, a motion for a change of venue is addressed to the sound discretion of the court, and the plain object of the act is to empower the court to grant a change of venue where the trial judge is convinced that an impartial jury cannot otherwise be obtained and that a fair and impartial trial cannot be had within the jurisdiction of the court: Commonwealth v. Cleary, 148 Pa. 26; Commonwealth v. March, 248 Pa. 434.

The court from the facts adduced at the hearing finds that undue excitement and prejudice existed against defendant following the shooting; that certain metropolitan newspapers published inflammatory articles, editorials, and cartoons, aimed not only at defendant, but charging connivance between the law enforcement agencies of the county and defendant; that the case was made an issue in the recent political campaign, inasmuch as the district attorney and one member of the prosecution staff were opponents for the office of district attorney and another member of the prosecution staff was a candidate for the office of judge at the same election; that shortly before the trial was to be held a magazine article, antagonistic to the interests of defendant, appeared and had wide circulation within the confines of Carbon County; and that a public collection to aid in the prosecution of defendant was solicited of and subscribed to by many residents of the Village of Nesquehoning.

The cumulative effect of these incidents was to create in the public mind a temporary feeling of animosity, ill-will, and hatred toward defendant and to make it doubtful that defendant could have secured a trial free from underlying influence, prejudice, or partiality at the time when the case was to be called.

That a prejudice exists to some extent in Carbon County against defendant may be conceded. This is a common and ordinary reaction in a community when an occurrence such as the one before us takes place. Yet it by no means follows that this feeling is so strong and universal that, among the large and intelligent body of the people, who in a great measure compose the population of Carbon County, a jury cannot be found which will try petitioner fairly, upon the law and the evidence, and not otherwise. It is further to be observed that popular feeling of this kind is fleeting in its character and soon passes away.

We feel it is the right and duty of this court to make its own appraisal of local conditions, prejudices, and sentiments existing as of the time of the disposition of the petition. The delay that has necessarily resulted *between the granting of the rule and the disposition of it by the court* will naturally tend to allay public feeling and soften prejudice: Commonwealth v. Delamater et al., 145 Pa. 210.

The court takes notice of the fact that the newspapers named by petitioner are no longer engaged in their alleged campaign of hostility toward petitioner. Also, with the completion of the recent political campaign, the fires of partisanship have been extinguished, and the question of the guilt or innocence of petitioner has ceased to be a subject of controversial discussion amongst the electors of the county. The public clamor has passed its climax, and the high feeling that was present in the locality where the unfortunate happening occurred has subsided with the passage of the intervening months.

The court is of the opinion that the application for a change of venue was presented in good faith and that at the time of presentation there existed such influences and prejudices as would have induced favorable action on the prayer of the petition, but that under present conditions there is little adverse feeling toward petitioner, and that

there is no such undue excitement, prejudice, or any combination of individuals, as would prevent petitioner from securing a fair trial in Carbon County.

Therefore, the petition for a change of venue should be dismissed.

*Order*

Now, to wit, December 11, 1939, the petition for a change of venue is dismissed.