Commonwealth *v.* Lucchese, Appellant.

Argued April 17, 1944. Before Keller, P. J., Bald-

RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Robert Grey Bushong,* for appellant.

*James F. Marx,* Assistant District Attorney, with him *David Sharman, Jr.,* District Attorney, for appellee.

OPINION BY JAMES, J., July 15, 1944:

Defendant, James Peters, has appealed from judgments and sentences following his conviction on four indictments: (1) charging him with transporting a female, one Claire K. Kerns, from the city of Reading to Harrisburg for the purpose of prostitution, and the acceptance of bawd money; (2) with transporting the same female, for the same purpose, to the city of Lebanon and the acceptance of bawd money; (3) with transporting the same female to the city of Scranton, for the same purpose, and the acceptance of bawd money; (4) with transporting the same female to Breslau, in Luzerne County, Pennsylvania.

At the conclusion of the charge the court said, "Any requests or additions?" to which trial counsel for appellant replied, "No, Your Honor." No exception was taken to the charge of the court, nor to the introduction of evidence.

Following the conviction, a motion for a new trial was filed by present counsel, who, on December 6, 1943,

requested the court to allow him an exception to the court's charge, which was denied.

Under two main questions involved in this appeal, appellant assigns (1) nine errors in the charge of the court and (2) the refusal to grant a new trial on the ground of after-discovered evidence attacking the credibility of Rose Morano, a Commonwealth witness.

There is ample testimony in this case to justify the convictions and we shall not attempt to recite it in full, except that which may be necessary in the discussion of alleged errors.

1. The first error assigned in the charge is the inadequacy of the charge in submitting the guilt or innocence of the defendants. The charge covers 16 printed pages of the record and discusses consecutively the testimony of the Commonwealth and the defendant upon each indictment and the duty of the jury to determine defendant's guilt or innocence upon each charge. As a whole the charge fairly details the testimony and we can find no palpable or fundamental error in the criticism which relates solely to the failure of the court to emphasize uncertainty as to specific dates, evasions and contradictions of the Commonwealth's principal witness. Even though Commonwealth's principal witnesses were prostitutes, and one a convict, which the court drew to the attention of the jury, the testimony was sufficient, if believed by the jury, to warrant the convictions.

2. We find no error in the trial judge stating: "Remember that there is corroboration on a number of points in her testimony" and then proceeding to give them in detail. Testimony to be classed as corroboration need not relate solely to the main fact involved, such as (in this case that defendant had Claire Kerns work as a prostitute, or to his receipt of bawd money), but may be considered as corroboration when the testimony relates to relevant and material facts, such as

(the presence of Claire Kerns in a house of prostitution), which have a direct relation to the main fact involved.

3. The third reason assigned is that the court failed to caution the jury with reference to the testimony of Thomas Dallessandro as an accomplice. This witness, convicted of a similar transportation charge, had been brought from the Eastern Penitentiary and testified that in company with defendant's brother, two other prostitutes and Claire Kerns, he had driven them to Harrisburg and that he had driven defendant and Claire Kerns to Lebanon. It does not appear that the witness knew the purpose of these trips, as neither the Commonwealth nor the defendant asked any questions relating to his knowledge of the purpose of the trips. Conceding that he may have been an accomplice, Claire Kerns, upon whom the Commonwealth relied to prove its case, was corroborated by other witnesses.

"The failure of the trial judge to describe Seiders as an accomplice and to warn the jury of the weight to be given his testimony would have been error even in the absence of a specific request for such instruction, if there had been no corroboration. See Com. v. Beck, 137 Pa. Superior Ct. 410, 9 A. (2d) 175. But we have held that a specific request is necessary—and there was none here—in the presence of corroboration: Com. v. Boyle, 108 Pa. Superior Ct. 598, 165 A. 521." *Com. v. Manuszak et al.,* 155 Pa. Superior Ct. 309, 38 A. 2d 355.

There being other corroboration and no specific request having been made, the court was not in error in failing to caution the jury as to the weight and value of this witness' testimony.

4. Complaint is made that reference was made by the court that on the second trip to Harrisburg the defendant's brother, Charles, was in the car and that the car belonged to Louis Peters. These facts were in the testimony and the court very properly mentioned

them as part of the history of the *Commonwealth's* case.

5. Criticism is made that the testimony was misstated in the charge in referring to the testimony of the presence of defendant at 9th and Bingaman Streets, in the city of Reading, when the women got in the car driven by Thomas Dallessandro to Harrisburg. In one portion of the charge the court said: "The defendant denied that he was there" and later said: "I don't think he said that he wasn't there." The court's latter statement was not correct, as defendant had denied that he was present. No objection was made by counsel at the time or at the close of the charge when the court said: "Any requests or additions?" to which trial counsel for defendant said: "No, Your Honor." We do not believe this to be such a misstatement as would warrant the granting of a new trial. As to the other complaint under this heading, the court was warranted in saying to the jury that in order to convict on the charge of "the transporting of her (Claire Kerns) to Harrisburg does not necessarily depend upon whether he was at 9th and Bingaman Streets to see them off" but " if * * * he aided and abetted in her transportation to Harrisburg; and if he took that active part in it, he would be guilty." There was no direct evidence of a combination between defendant and Dallessandro and his brother, Charles, but in view of Claire Kerns' positive testimony of defendant's presence and that she went to Harrisburg to work for defendant, the relation of all the parties was a matter for consideration by the jury.

6. The jury were instructed that their first job was to answer the question whether they believed Claire Kerns and her supporting witnesses. If they did not believe her, the verdict should be not guilty, but if they did believe the Commonwealth's witnesses, then it was their duty to consider the Commonwealth's testi-

mony "in connection with the defendant's testimony and all the rest of the testimony in the case before pronouncing the defendant guilty." This was the orderly approach which a jury should take in determining the guilt or innocence of a defendant. It is the duty of the Commonwealth, in the first instance, to convince the jury of the truth of its own cause before the defendant and his testimony are to be considered, and then after consideration of all the testimony, to arrive at a verdict. We find no error in these instructions.

7. Exception is made to the charge that in discussing the attacks made upon defendant's testimony the court failed to mention certain other facts which were testified by the defendant. Had this oversight been brought to its attention the court would undoubtedly have specifically brought them to the attention of the jury. Recognizing that omissions or inaccuracies may have crept into the charge, the trial judge, at the conclusion, requested of counsel whether there were any requests or additions to be made, to which counsel for defendant replied no. Under these circumstances, and giving full consideration to the nature of the omissions, we find no reversible error.

8. Appellant complains as to the use of the word "loath" when the court said: "Well, look at all that testimony. It certainly seems to me that you would be very loath to accept this defendant's statements and testimony as being more worthy than that of the Commonwealth's witnesses. But it is your peculiarly difficult job as sworn jurors in this case to say whom you believe, because you are the only people who can convict this man or free him." As we read it, the word "loath" as used by the court means "unwilling" or "reluctant" and not in the sense of "hateful", "repulsive" or "odious". Appellant frankly says: "It may be fairly said that the trial judge in effect told the jury that in his opinion the jury would dislike to or hate

to consider the testimony of the defendant more worthy than that of the Commonwealth's testimony." In thus expressing his opinion a reading of this record is in itself sufficient justification but the opinion of the court may have been further influenced as to the comparative truth of the Commonwealth's witnesses and the defendant's witnesses by their attitude and behavior at the trial. We have frequently said that the trial judge, upon reasonable ground, has the right to express his opinion as to the weight or value of certain evidence or the credibility of a witness, provided it is not made as a binding direction, but leaves the jury free to act. *Com. v. Cunningham,* 232 Pa. 609, 81 A. 711; *Com. v. Johnson,* 89 Pa. Superior Ct. 439, 447; *Com. v. Pursel,* 110 Pa. Superior Ct. 110, 167 A. 399.

9. The ninth complaint is that the court said defendant's testimony should be scrutinized "very carefully, very carefully." Defendant admitted intimate relations with Commonwealth's principal witness but denied his guilt of the charges in the indictment. Under these circumstances the trial judge undoubtedly was of the opinion that he should emphasize to the jury consideration of the defendant's testimony and in thus expressing his opinion we find no reversible error.

Defendant further seeks a new trial on the ground of after-discovered evidence. To sustain this reason appellant argues that the testimony of Rose Morano, a Commonwealth's witness, was contradicted by testimony which she had given in February, 1943, at several trials in the Court of Quarter Sessions of Northampton County. Viewed in a light most favorable to defendant the prior testimony might be regarded as a contradiction of her testimony in the present trial that she was working as a prostitute in April, 1942, but does not contradict her important testimony that she met Claire Kerns and the defendant at a house of prostitution at Breslau, in Luzerne County.

"To entitle a defendant to a new trial on this ground the evidence must have been discovered since the trial, and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative, or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted." *Com. v. Mellon,* 81 Pa. Superior Ct. 20, 25; *Com. v. Kerns,* 124 Pa. Superior Ct. 61, 188 A. 81.

"After-discovered evidence, offered only to impeach credibility of witnesses who testified at the trial 'furnishes no sufficient reason for granting a new trial', citing Com. v. Carter, 272 Pa. 551, 555, 116 A. 409." *Com. v. Elliott,* 292 Pa. 16, 24, 140 A. 537; see also *Com. v. Becker,* 326 Pa. 105, 191 A. 351; *Com. v. Giacobbe,* 341 Pa. 187, 19 A. (2d) 71.

"Speaking generally, the grant of a new trial is a matter of discretion with the trial court, and we will not, in a murder case, reverse the action of such a tribunal in refusing that relief unless it clearly appears that harmful error occurred at the trial, or in cases of manifest abuse of discretion." *Com. v. Elliott,* supra.

In considering this question the court below said: "We would not be justified in disturbing the verdict here upon the basis of these allegations." Our review of this record convinces us that in so finding there was no abuse of discretion by the court below in refusing a new trial.

Judgments affirmed.