## Commonwealth *v.* Kuhn, Appellant.

Argued September 24, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Chas. W. Eaby,* for appellant.

*Marshall M. Cohen,* with him *John L. Hamaker,* District Attorney, for appellee.

OPINION BY RENO, J., October 24, 1945:

Appellant, proprietress of a millinery shop in Lancaster, was convicted of fraudulent conversion and aggravated assault and battery, and has appealed from the refusal of the court below to grant her motion for new trial which was based on the theory of after-discovered evidence branding the prosecutor a perjurer. The adequacy of the evidence in support of the conviction is not challenged, and for present purposes it will suffice to review briefly the testimony produced on behalf of the prosecution and evidently credited by the jury.

Joy LeRoy Zubrod, the prosecutor and sole witness for the Commonwealth, testified he first met appellant by chance in New York City on the evening of September 4, 1943, at which time he was an officer on active duty with the U. S. Coast Guard. The friendship ripened to such an extent that on September 20, 1943, according to Zubrod, he and appellant agreed that when he was discharged from the service they would marry and establish a restaurant in Lancaster. The prosecutor testified that he thereupon gave appellant $525 on her promise that she would deposit the money, together with a like amount of her own funds, for safekeeping until their plans could be put into operation. Zubrod said he gave appellant an additional $450 for the same purposes on April 3, 1944, but that he learned for the first time on April 30, 1944, that appellant was married and was not in a position to carry out the prior arrangements. After a period of indecision, the prosecutor related, appellant finally refused to marry him or to return his money early in the evening of June 19, 1944. Later that evening, Zubrod testified, he went to appellant's shop, and finding the door unlocked, entered and waited for her in her apartment at the rear of the store. When appellant arrived, an argument ensued

during the course of which Zubrod was assaulted, receiving, among other injuries, a blow to the base of his spine with an alarm clock. The prosecutor testified that he returned to his ship the following morning, where his back was strapped by the medical officer on board. When, in the evening of the following day Zubrod went to New York City in the line of his duties, he testified he collapsed on the street and was taken to the Bellevue Hospital where he remained for three days, following which, by reason of the condition of his back, he required the aid of crutches for a period of ten weeks.

In support of the motion for new trial interrogatories were directed to the custodian of records at Bellevue Hospital, a New York City police officer, and the Inspector of Police for New York City. The custodian of records testified that Zubrod had been confined in the prison ward at the hospital, suffering from injuries finally diagnosed as a sacro-iliac sprain, from the morning of June 22, 1944, until the evening of June 23, 1944, as distinguished from the three day period described by the prosecutor. Officer O'Donnell stated in answer to the interrogatories that he had observed Zubrod conducting himself in a disorderly manner on the evening of June 21, 1944, and that he had subdued him, using reasonable force, had placed him under arrest, and that the prosecutor was in custody, including his confinement to the hospital, until June 23. The police inspector corroborated O'Donnell as far as could be done from the records under his supervision.

From this recital of the facts it will readily appear that no adequate cause was presented to move the court's discretion to grant appellant a new trial. See *Com. v. Patterson,* 272 Pa. 522, 116 A. 475; *Com. v. Kerns,* 124 Pa. Superior Ct. 61, 188 A. 81; *Com. v. Stewart,* 110 Pa. Superior Ct. 279, 168 A. 528. It is no longer open to question that after-discovered evidence offered merely for the purpose of impeaching the credibility of a witness will not entitle a convicted defendant to a fresh opportunity to present a discredited defense to a new jury,

with the hope of a more sympathetic reception. *Com. v. Kostan,* 349 Pa. 560, 37 A. 2d 606; *Com. v. Giacobbe,* 341 Pa. 187, 19 A. 2d 71; *Com. v. Becker,* 326 Pa. 105, 191 A. 351; *Com. v. Lucchese,* 155 Pa. Superior Ct. 325, 38 A. 2d 722. As was said in the strikingly similar case of *Com. v. Moskovitz,* 142 Pa. Superior Ct. 325, 326, 16 A. 2d 317: "We summarized in *Com. v. Mellon,* 81 Pa. Superior Ct. 20, 25, the well settled rules governing the granting of new trials in this Commonwealth on the ground of after-discovered evidence, to wit, to entitle a defendant to a new trial on this ground the evidence (1) must have been discovered since the trial, and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be (2) simply corroborative or cumulative or (3) merely to impeach the credibility of a witness; and (4) it must be such as would likely result in a different verdict if a new trial were granted." See, also, *Com. v. Russella,* 117 Pa. Superior Ct. 359, 177 A. 506.

Here, there was no explanation offered why the testimony developed on the interrogatories was not brought to light in advance of trial in the exercise of ordinary diligence in the investigation of the case; in fact, the name of a resident physician at Bellevue Hospital was endorsed on the assault and battery indictment as one of the Commonwealth's witnesses. The testimony, even if offered at the trial, would merely have contradicted Zubrod's assertion that he had been hospitalized for three days by showing that he had spent only one day and a half at Bellevue. Furthermore, it is highly improbable that the evidence would have procured a different verdict, for it did not go so far as to raise any reasonable inference that Zubrod's injuries were the result of his treatment at the hands of Officer O'Donnell rather than the assault which the testimony lay at the door of appellant. Nor would it have affected the verdict upon the charge of fraudulent conversion which the trial judge evidently regarded as the more serious offense. For that offense he sentenced appellant to pay

a fine of $200 and the costs, and placed her under probation for two years. For the assault and battery he imposed a fine of $25, and the costs, and suspended sentence for the aggravated assault and battery charge.

Judgments affirmed.