Commonwealth *v.* Krick, Appellant.

Argued March 14, 1949. Before HIRT, RENO, DITH-RICH, ARNOLD and FINE, JJ. (RHODES, P. J., and ROSS, J., absent).

*Paul S. Lehman,* for appellant.

*Horace W. Vought,* District Attorney, for appellee.

OPINION BY RENO, J., July 15, 1949:

Defendant was convicted of statutory rape upon Freda Wagner on two indictments. On one he was sentenced to serve a year in the county prison and pay a fine of $250. Sentence was suspended on the other indictment.

Since the case must be tried again a brief recital of the facts will suffice. Defendant went to board at the Wagner home in October, 1946. On December 16, 1946 he is accused of entering the bedroom of Freda Wagner, who was then twelve years of age, getting into her bed

and having sexual intercourse with her. She made no outcry although she testified she heard her parents in the cellar doing the wash. The girl further testified that on April 20, 1947, defendant again had intercourse with her under almost identical circumstances. She admitted that her mother, who was in the kitchen at the time, could have heard an outcry. She made no complaint until May 22, when under questioning by a Mrs. Weaver, with whom she was staying, she stated she thought she was pregnant and named the defendant. He denied the accusations and was corroborated by the girl's mother Florence Wagner, who testified that she and Krick were together in the kitchen at the time of the alleged assaults.

Prior to the complaint, on May 17, 1947 Krick left the Wagner home and went to a boarding house in Yeagertown. Two days later Mrs. Wagner left home and took a room at the same boarding house. The girl then stayed with the Weavers and three days after her mother had joined Krick, Freda accused defendant of the assaults.

I. Defendant moved for a new trial, and its refusal is the subject of the first assignment of error. Subsequent to the trial, which ended December 11, 1947, Freda wrote a letter on January 16, 1948 to her mother in Lewistown, 30 miles away, in which she completely retracted her testimony. In it she stated that her father and the Weavers had told her to so testify and that she did it out of revenge for her mother's leaving home. In May, 1948 Freda visited her mother in Lewistown and while there she went alone to a justice of the peace and made a sworn statement in which she averred: "I was told what to say in court and know that it is not true." She denied that defendant had anything to do with her. The trial judge refused the motion, stating that "we are informed by a reputable person, that in his presence, the mother threatened suicide if the girl refused to refute her testimony in Court." No depositions were taken and the learned judge's decision rests, so the district attorney

advises us, upon a statement made to the judge by his neighbor Dr. Petrick, who employed Freda as a child nurse after the trial.

Whether a new trial should be granted to let in after discovered evidence is a matter within the discretion of the trial judge and on appeal should not be reversed in the absence of a clear abuse of discretion. *Com v. Stewart*, 110 Pa. Superior Ct. 279, 286, 168 A. 528; *Com. v. Kerns*, 124 Pa. Superior Ct. 61, 65, 188 A. 81; *Com. v. Lucchese*, 155 Pa. Superior Ct. 325, 332, 38 A. 2d 722.

The principles relating to the granting of a new trial on the basis of newly discovered evidence are well settled. All four of the essential requisites are present in the instant case: (1) The newly discovered evidence could not have been produced at the trial as the statements were made subsequent thereto; (2) it does not simply impeach the credibility of a witness;[1] (3) it is not merely cumulative or corroborative; and (4) it clearly is such evidence that would result in a different verdict at a new trial since the defendant was convicted *solely* upon Freda's testimony. See *Com. v. Brady*, 76 Pa. Superior Ct. 488; *Com. v. Mellon*, 81 Pa. Superior Ct. 20, 25; *Com. v. Lucchese*, supra; *Com. v. Kuhn*, 158 Pa. Superior Ct. 154, 157, 44 A. 2d 314.

In a civil action where there is incontrovertible evidence obtained after the trial that the verdict was ren-

---

[1] Where the after discovered evidence has no effect on the merits of the case but only goes to impeach the credibility of a witness, the courts are in accord that such evidence does not furnish sufficient cause for granting a new trial. In the following cases the newly discovered evidence was simply a contradiction of the testimony of a *supporting* witness and even conceding the falseness of his testimony there was sufficient evidence to support the verdict. *Com. v. Flanagan*, 7 W. & S. 415; *Com. v. Carter*, 272 Pa. 551, 116 A. 409; *Com. v. Elliott*, 292 Pa. 16, 140 A. 537; *Com. v. Becker*, 326 Pa. 105, 191 A. 351; *Com. v. Giacobbe*, 341 Pa. 187, 19 A. 2d 71; *Com. v. Kostan*, 349 Pa. 560, 37 A. 2d 606; *Com. v. Lucchese*, 155 Pa. Superior Ct. 325, 38 A. 2d 722; *Com. v. Kuhn*, 158 Pa. Superior Ct. 154, 44 A. 2d 314; *Com. v. Hanes*, 162 Pa. Superior Ct. 206, 57 A. 2d 165.

dered by reason of perjury by the litigant in whose favor it was entered, it is an abuse of discretion for the trial court to refuse a new trial and on appeal will be reversed. *Candelore v. Glauser*, 291 Pa. 582, 140 A. 525; *Weissbach v. Price*, 328 Pa. 46, 195 A. 21. There is even stronger support for the application of the rule in criminal cases where life and liberty are at stake.

Freda's letter and affidavit do not merely impeach her credibility but completely destroy and obliterate the testimony of the one witness upon whose testimony the defendant was convicted. The jury's verdict cannot be sustained without her testimony. In effect the young girl says that she committed perjury, and it was upon her perjured testimony that the defendant was convicted. Under such circumstances a new trial should be awarded. The trial judge clearly abused the discretion vested in him by relying upon the unsworn and extra-curiam statement of his neighbor, however reputable he may have been. Judicial discretion is properly exercised only when it is judicially exercised. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. Acceptance of a discrediting statement obtained in a private conversation is not a judicial determination of a legal question. In the absence of sworn evidence impeaching the girl's retraction, a new trial should have been granted. The assignment is sustained.

II. The second assignment is based on a denial of a constitutional right. The trial judge permitted two alternate jurors to retire to the jury room after submission of the case to it. Defendant immediately took exception to this procedure and the alternate jurors were withdrawn ten minutes later. The Act of May 1, 1935, P. L. 127, 17 PS §1153, provides, inter alia, that where in the opinion of the trial judge the case is likely to be a protracted one, two additional jurors may be selected as alternates, with all powers and duties of regular jurors, "but shall not retire with the jury of twelve after the

case is submitted to it". Since the alternates are not allowed to participate in the deliberations of the jury, the Act has been held not to violate the constitutional guarantee that the right to "trial by jury shall be as heretofore, and the right thereof remain inviolate": *Com. v. Fugmann*, 330 Pa. 4, 28, 198 A. 99. Whether the alternate jurors were selected at the request of the district attorney or counsel for defendant or by the court's own motion is fundamentally unimportant so long as the alternates were discharged before the deliberations of the original twelve commenced. *Com. v. Spallone*, 154 Pa. Superior Ct. 282, 288, 35 A. 2d 727. We have no way of knowing whether the alternates deliberated with the other twelve during those ten minutes or in any way influenced their decision, but we cannot say with fair assurance that the error was harmless. *Com. v. Blose*, 160 Pa. Superior Ct. 165, 50 A. 2d 742. To allow the alternates any opportunity to deliberate with the others after the case had been submitted was a direct violation of the Act, and constitutes reversible error. The second assignment is sustained.

III. The fourth assignment challenges admission of the testimony of Freda's father who testified that on May 22, approximately 5 months after the first attack and a month after the second, Freda told him that defendant had had intercourse with her. The girl's statement was obviously not a spontaneous utterance, and was not admissible as res gestae. *Com. v. Cupps*, 157 Pa. Superior Ct. 341, 43 A. 2d 545; *Com. v. Nowalk*, 160 Pa. Superior Ct. 88, 50 A. 2d 115.

However, the *fact* that a complaint was made, even though it does not qualify as res gestae, is always admissible. Professor Wigmore analyzed three[2] theories

---

[2] "There are three possible principles, well enough established otherwise, upon which such evidence can be offered:

1, as an Explanation of a Self-Contradiction (ante, §1042);

2, as a Corroboration by other Similar Statements, under the present principle;

upon which evidence of complaints by victims of rape may be received in evidence. 4 Wigmore, Evidence, §§1134-1140. There are marked and important distinctions between the principles governing the three theories. For the present, it is enough to point out that where the complaint qualifies as·res gestae the *details* of the victim's statement may be recounted, but when the statement does not qualify as res gestae or as testimonial rehabilitation of an impeached complainant only the *fact* that complaint was made may be related, including, of course, so much of the complaint as will identify the occurrence complained of with the crime charged. See also 3 Wigmore, §1042; 6 Id. §§1760-1761; 44 Am. Jur., Rape, §§82-86; 52 C. J., Rape, §§88-94; Henry, Evidence, §300A.

It should be observed too that the weight attaching to a complaint depends upon the promptness with which it is made and the nature of the explanation given for any delay. Indeed an unreasonable or unexplained delay may, in the circumstances, justify an inference against the sincerity of the complaint. *Com. v. Mtynarczyk*, 34 Pa. Superior Ct. 256; *Com. v. Allen*, 135 Pa. 483, 19 A. 957; *Com. v. Oyler*, 130 Pa. Superior Ct. 405, 197 A. 508. The weight of the testimony is for the jury but the court should carefully instruct it as to the relative probative value of prompt and delayed complaints, the circumstances in which they are made or withheld, and the possible inferences which may be legitimately drawn from them.

Virtually, all that Freda's father testified to was the *fact* that Freda told him that she had had intercourse with defendant. There is no merit in this assignment.

IV. Defendant's fifth assignment of error is overruled. It is argued that the trial judge erred in consolidating the trial of the two indictments charging defendant with statutory rape on separate dates. Defend-

---

3, as a 'Res Gestae' Declaration, excepted under the Hearsay Rule (post, §1760)." 4 Wigmore, Evidence, §1134.

ant does not question the propriety of the rule that the trial court is vested with discretion in consolidating two related indictments and that such ruling will not be disturbed unless it clearly appears that defendant's rights were thereby prejudiced. His position is that the consolidation became prejudicial when the girl's father was permitted to testify to his daughter's complaint, and that had the indictments been tried separately his testimony concerning the complaint would have been too remote in regard to the alleged rape on December 16, 1946. We have already shown that the admission of this testimony was proper, and therefore consolidation of the indictments did not harm defendant. *Com. v. Roberts*, 161 Pa. Superior Ct. 548, 55 A. 2d 577.

V. The sixth and seventh assignments of error are based upon the trial judge permitting the credibility of a defense witness to be impeached by evidence involving collateral matters. The girl's mother testified on behalf of the defendant. She stated that they had occupied separate rooms at the boarding house in Yeagertown but admitted that she and Krick had lived together since May 19 when she left her husband and daughter. In rebuttal the Commonwealth, over defendant's objection, produced the arresting officer who testified that when Krick was taken into custody he obtained his clothes from a closet in Mrs. Wagner's room. Mrs. Wagner had testified under cross-examination that Mr. Krick's clothes were in her closet because the landlady was sick and he had not yet put his clothes away. Defendant concludes that the purpose of this evidence was to affect the witness' credibility and show a meretricious relationship. The jury was well aware of the mother's interest in the case and her desire to protect and exonerate the accused. Her conduct with the defendant was openly admitted. A witness cannot be contradicted on matters which are not germane to the issue for the purpose of testing credibility. *Com. v. Petrillo*, 341 Pa. 209, 19 A.

2d 288. But here the testimony did not contradict the witness and therefore could not harm the defendant.

The remaining assignments of error do not require discussion. On the second trial reasonable doubt will be defined according to the definition provided by *Com. v. Kluska*, 333 Pa. 65, 3 A. 2d 398.

Reversed and a new trial awarded.