J-A13039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANA JAVON JOHNSON | |
| Appellant | No. 1748 WDA 2013 |

Appeal from the Judgment of Sentence September 17, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0016575-2012

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED JULY 10, 2015**

Dana Javon Johnson appeals from the judgment of sentence entered on September 17, 2013, in the Court of Common Pleas of Allegheny County, after a jury convicted him of first-degree murder.[1]  He received the mandatory sentence of life imprisonment.  Specifically, Johnson was charged with the shooting death of Donald Russell, while both men were attending a New Year's Eve party in the Arlington section of Pittsburgh.  Russell was shot 11 times.  In this timely appeal, Johnson claims: 1) there was insufficient evidence to support his conviction, 2) the trial court erred in failing to instruct the jury on the lesser charge of involuntary manslaughter, 3) the trial court abused its discretion in failing to grant a mistrial after a witness

_____

[1] 18 Pa.C.S. § 2502(a).

referred to having seen Johnson's "mug shot", and 4) the trial court abused its discretion in failing to grant Johnson's pre-trial motion to dismiss based on the alleged violation of Rule 600.[2] After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The evidence, as stated by the trial court in its Pa.R.A.P. 1925(a) opinion is as follows:

> The evidence presented at trial established that in the early morning hours of December 31, 2011, the victim, Donald Russell and many others were at a house party at 313 Sterling Street in the Arlington section of the City of Pittsburgh. [Johnson] was seen at the party with Kavon Worlds and Montel Williams. At some point, a neighbor was awakened by shouting outside and heard discussion of a gun. Thereafter, [Johnson] was then seen again inside the party wearing an AK-47 type rifle on a strap underneath an army fatigue jacket. There was a commotion during the party and Donald Macon observed [Johnson] pointing his rifle at the victim, Donald Russell and reaching into his pockets. Macon fled and seconds later, shots were fired. When Macon returned, the victim had been shot several times and was eventually pronounced dead. An autopsy revealed that [Russell] had been shot 11 times, with two (2) shots being fatal or potentially fatal and nine (9) of those wounds being superficial or not otherwise fatal.[3] Although some of the superficial wounds were consistent with being fired by a .9 mm [sic] handgun, the size and trajectory length of the fatal wounds were consistent

_____

[2] We have re-ordered Johnson's claims.

[3] The opinion inadvertently states it was "the Defendant" who was shot 11 times.

- 2 -

with a 7.62 x .39 mm [sic][4] bullet fired from an automatic [sic] rifle.

Pa.R.A.P. 1925(a) Opinion, 7/15/2014, at 11.

Additionally, the associate medical examiner, Dr. Todd Luckasevic, M.D., testified regarding the two fatal or possibly fatal wounds. The possibly fatal wound was caused by a shot that entered Russell's right lower flank, travelling back to front, right to left and slightly downward. It struck Russell's spinal column and pierced both his large and small intestines. The fatal shot entered Russell's left upper thigh travelling front to back, left to right and upward. This wound was caused by a 7.62 caliber full metal jacket rifle bullet that transected Russell's left iliac artery. An AK-47 semi-automatic rifle, such as Johnson was described to have brandished, is a 7.62 caliber gun. Of the 11 gunshot wounds suffered by Russell, six were determined to have travelled back to front, three travelled front to back, and two were indeterminable. It was impossible to determine the order in which the wounds were suffered. Finally, the medical examiner testified there was no evidence Russell was shot from close range (within three feet) and that fact was used by Russell's counsel in closing argument. *See* N.T. Video Trial Testimony, 8/26/2013, at 22-23, 31; N.T. Trial, 9/16/2013, at 806.

_____

[4] These numbers represent the diameter of the bullet and the size of the cartridge case. *See* N.T. Trial, 9/12-13/2013, at 684. However, the proper measurements are 7.62 x 39 mm (not .39 mm) and 9 mm (not .9 mm).

Johnson's first argument is that there was insufficient evidence to support his conviction, in that there was no evidence of a specific intent to kill. "Criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). Further, "[t]o obtain a conviction of first degree murder, the Commonwealth must prove that a human being was unlawfully killed, that the defendant perpetrated the killing, and that the defendant acted with malice and a specific intent to kill." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citation omitted). Additionally, "[i]t is well-settled that specific intent to kill can be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body." *Id*.

Johnson argues that Commonwealth witness, Donald Macon, the only witness to testify as to what transpired immediately before the shooting, claimed he saw Johnson and Russell wrestling just prior to the shooting and that at this time, the barrel of the AK-47 was caught in Russell's clothing and was pointing up through the collar of Russell's shirt. Macon hid thereafter, but heard multiple gunshots within seconds.

> While the shooting occurred moments after Macon left the area, evidence revealed that Mr. Russell was hit by erratic gunfire that came from at least two different weapons.[5] This evidence was manifestly insufficient to create even the reasonable inference

_____

[5] Johnson was seen with two other men at the party, one of whom was carrying what appeared to be a semi-automatic handgun.

- 4 -

that Mr. Johnson purposely directed the firearm at Mr. Russell and thus sustain his conviction for first-degree murder.

Appellant's Brief at 22.

Our standard of review regarding a claim of insufficiency of the evidence is well-settled: We view the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom. Our scope of review is plenary.

*Commonwealth v. Rabold*, 920 A.2d 857, 859 (Pa. Super. 2007) (citations omitted).

Here, the evidence viewed in the light most favorable to the Commonwealth as verdict winner demonstrated that Johnson possessed an AK-47 type rifle, which is a 7.62 caliber weapon. Russell was shot at 14 times, 10 shots from a 7.62 caliber weapon and four from a 9 mm weapon. Russell was struck 11 times. The fatal wound was from the 7.62 weapon. The possibly fatal wound had the characteristics of being from the rifle. Russell was shot five times in the trunk, and three times each in the upper and lower extremities. None of the gunshots were fired from close range. Russell was hit by 78% of the bullets fired. This does not bespeak erratic gunfire. Contrary to Johnson's assertions, the evidence fully supports the inference that Russell was intentionally shot from at least three feet away. Therefore, Johnson's sufficiency claims fails.

Johnson's next claim is that the trial court erred in refusing to instruct the jury on involuntary manslaughter.

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated

portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted).

A defendant to a murder charge is entitled to instruction on involuntary manslaughter "only when requested, and where the offense has been made an issue in the case and the trial evidence would reasonably support such a verdict." *Commonwealth v. White*, 415 A.2d 399, 402 (Pa. 1996). However, "[i]t has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Id*. at 400.

The statutory definition of involuntary manslaughter is as follows:

A person is guilty of involuntary manslaughter when as a direct result of doing an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S. § 2504(a).

This claim is also based upon Donald Macon's testimony that the AK-47 was caught in Russell's shirt moments before he was shot. Johnson argues this fact raises the possibility that Russell was shot inadvertently while the two men wrestled. This argument is unsupported by the evidence. While Macon testified he saw the barrel of the rifle protruding from the collar

of Russell's shirt, the evidence showed Russell was not shot from close range, as would have occurred had the two men been wrestling when the gun was fired. Further, the AK-47 was fired ten separate times, meaning Johnson pulled the trigger ten times. This fact also argues against inadvertent discharge during a fight.[6] In this regard, we agree with the Commonwealth's argument that the instant case is similar to **Commonwealth v. Williams**, 415 A.2d 403 (Pa. 1980), in which our Supreme Court determined "it would be ludicrous to suggest that the defendant recklessly or negligently struck twelve blows with an iron pipe to the blind defendant's head." **Id**. at 404. The evidence presented at trial demonstrated Russell was shot by two people, from a distance of more than three feet, with multiple bullets striking Russell in vital parts of his body. There is nothing about these facts that suggest the killer was anything other than purposeful in his actions. Accordingly, the charge on involuntary manslaughter was not warranted.[7]

_____

[6] Other than the general contention that Russell might have been shot while wrestling with Johnson, Johnson has put forth no argument how, while wrestling, Russell could have been shot 11 times, with two different caliber weapons, front to back, back to front, upward and downward tracks at a distance of more than three feet.

[7] We also note that the instant argument for involuntary manslaughter contradicts the theory put forward at trial, in which defense counsel argued Johnson was not the shooter, and could not have been the shooter, based upon the timing of events as related by independent witnesses. **See** N.T. Trial, 9/13/2013, at 793-94. Additionally, counsel argued given the narrowness of the hall where Russell was shot and the fact that none of the
*(Footnote Continued Next Page)*

Johnson's next claim is that the trial court erred in failing to grant a mistrial after a civilian witness testified she reviewed an array of eight "mug shots", one of which was Johnson. Defense counsel moved for a mistrial, which was denied. However, the trial court offered to give a curative instruction instead. Counsel replied:

> The only curative instruction I would want would be one that basically says she's referred to them as "mug shots," but there's no evidence that that's what they are, and that they should not - blah, blah, draw any inference from that.

N.T. Trial, 9/10/2013, at 191.

> The trial court agreed and gave the curative instruction as requested:

> Ladies and gentlemen of the jury, [the witness] referred to this group of photographs as mug shots. There's no evidence that are in fact mug shots. They're just merely to be looked upon as photographs.

*Id*.

> Our standard of review for this claim is as follows:

> In reviewing a question of whether a trial court erred in denying a motion for a mistrial, an appellate court considers whether the lower court abused its discretion.

*Commonwealth v. Young*, 849 A.2d 1152, 1154 n. 1 (Pa. 2004) (citation omitted). Specifically, where the issue concerns a reference to "mug shots":

*(Footnote Continued)* ——————————

wounds were from close range, Macon's account of the shooting was incredible. *Id*. at 806. Although Johnson did request a charge for involuntary manslaughter, the theory of the case as espoused in closing argument was that Johnson never fired a shot; rather, an unidentified person had to have been the killer.

A review of these cases clarifies that in applying the [**Commonwealth v.**] **Allen** [292 A.2d 373 (Pa. 1972)] test to the facts of a particular matter, a mere passing reference to photographs does not amount to prejudicial error. [**Commonwealth v.**] **Carlos** [341 A.2d 71 (Pa. 1975)]. Further, they explain that references to prior police contact do not amount to reversible error. [**Commonwealth v.**] **Riggin** [386 A.2d 520 (Pa. 1978)]. Instead, it is only those references that expressly or by reasonable implication also indicate some involvement in prior criminal activity that rise to the level of prejudicial error. [**Commonwealth v.**] **Nichols** [400 A.2d 1281 (Pa. 1979); [**Commonwealth v.**] **Turner** [311 A.2d 899 (Pa. 1973)].

**Id**. at 1156.

Finally,

It is also well established that "[a] trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." [**Commonwealth v.**] **Chamberlain**, [30 A.3d 381 (Pa. 2011)] **supra** at 422 (citation and internal quotation marks omitted); see also **Commonwealth v. Travaglia**, 611 Pa. 481, 28 A.3d 868, 879 (2011) ("A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial."). When the trial court gives adequate cautionary instructions, declaration of a mistrial is not necessary.

**Commonwealth v. Bryant**, 67 A.3d 716, 728 (Pa. 2013).

Having given an adequate cautionary instruction requested by Johnson's counsel, the grant of a mistrial was not necessary.

We also note that under **Bryant**, Johnson is not entitled to relief as the comment did not unavoidably deprive Johnson of a fair trial. The witness, who was not a police officer or otherwise employed by the Commonwealth, made a passing reference to what are colloquially known as "mug shots."

- 9 -

The Commonwealth did not attempt to exploit the reference, the jury was properly instructed as to the photographs, and there was otherwise no specific reference to the origins of the pictures. Further, the jury acquitted Johnson of two counts of robbery, which indicates they were not prevented from weighing the evidence and rendering a true verdict. In light of the foregoing, we discern no abuse of discretion. Accordingly, Johnson is not entitled to relief on this issue.

In his final claim, Johnson argued the trial court erred in failing to grant his pre-trial motion to dismiss pursuant to Pa.R.Crim.P. 600, regarding his speedy trial rights.

Pursuant to Pa.R.Crim.P. 600(A)(2)(a), the Commonwealth shall commence a trial, in which a written complaint is filed against the defendant "within 365 days from the date on which the complaint is filed." Additionally,

> [w]hen a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated.

Pa.R.Crim.P. 600(D)(1).

Our standards for reviewing a Rule 600 claim are well-settled:

> "In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." **Commonwealth v. Hill**, 558 Pa. 238, 244, 736 A.2d 578, 581 (1999). *See also* **Commonwealth v. McNear**, 852 A.2d 401 (Pa. Super. 2004). "Judicial discretion requires action in conformity with law, upon facts and circumstances judicially

before the court, after hearing and due consideration." ***Commonwealth v. Krick***, 164 Pa.Super. 516, 67 A.2d 746, 749 (1949). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." ***Commonwealth v. Jones***, 826 A.2d 900, 907 (Pa. Super. 2003) (*en banc*) (*citing* ***Commonwealth v. Spiewak***, 533 Pa. 1, 8 n. 4, 617 A.2d 696, 699 n. 4 (1992)).

¶ 10    "The proper scope of review...is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court." ***Hill***, ***supra***, at 244, 736 A.2d at 581; ***McNear, supra*** at 404. *See also* ***Commonwealth v. Jackson***, 765 A.2d 389 (Pa. Super. 2000), *appeal denied,* 568 Pa. 628, 793 A.2d 905 (2002){ "pageset": "Sea. "[A]n appellate court must view the facts in the light most favorable to the prevailing party." ***Id***. at 392.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

***Commonwealth v. Aaron***, 804 A.2d 39, 42 (Pa. Super. 2002)(*en banc*) (internal citations omitted).

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the

> collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

**Commonwealth v. Corbin**, 390 Pa.Super. 243, 568 A.2d 635, 638-39 (1990).

**Commonwealth v. Hunt**, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*).

> Also,

> If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant files a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay. **Hill**, **supra**, at 263, 736 A.2d at 591, Pa.R.Crim.P. 600(C), (G). "Even where a violation of Rule [600] has occurred, the motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and...the circumstances occasioning the postponement were beyond the control of the Commonwealth." **Id**. at 263, 736 A.2d at 591.

> "Due diligence is a fact-specific concept that must be determined on a case-by-case basis." **Id**. at 256, 736 A.2d at 588. "Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth." *Id.* (emphasis added).

**Id**. at 1241-42.

Instantly, both parties agree that the written complaint was filed against Johnson on August 28, 2012, meaning Johnson's trial was to begin

by August 28, 2013.[8]   However, Johnson's trial did not begin until September 5, 2013; 373 days after the original filing of the written complaint and eight days past the Rule 600 time limit.

Immediately prior to trial, a hearing was held on Johnson's motion to dismiss pursuant to Rule 600.  At issue was 20 days between the filing of the complaint and Johnson's arrest.  The Comment to Rule 600 addresses this situation.

> For purposes of paragraph (C)(1) and paragraph (C)(2), the following periods of time, that were previously enumerated in the text of formed Rule 600(C), are examples of periods of delay

_____

[8] The written complaint found in the certified record is dated December 4, 2012.  However, the trial court has indicated in its Pa.R.A.P. 1925(a) opinion that the complaint was originally filed on August 28, 2012 and was withdrawn and refiled because the Commonwealth could not locate its eyewitness, Donald Macon.

> [W]hen an initial complaint has been withdrawn or otherwise dismissed, the [Rule 600 time] period begins to run anew with the filing of a subsequent complaint only if (1) the earlier complaint was properly dismissed by a competent magisterial or judicial authority, and (2) the record does not reveal evidence of a prosecution attempt to circumvent Rule [600].

***Commonwealth v. Lynn***, 815 A.2d 1053, 1057 (Pa. Super. 2003)(citation omitted).

There is no determination to suggest that the Commonwealth was attempting to thwart Johnson's speedy trial rights in its inability to locate the witness.  However, the certified record is silent as to the manner in which the complaint was dismissed.  Because the Commonwealth agrees in its Appellee's Brief that August 28, 2012 is the proper date to begin Rule 600 calculations, we accept that date as well.

- 13 -

caused by the defendant. This time must be excluded from the computations in paragraphs (C)(1) and (C)(2):

> (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence.

Pa.R.Crim.P. 600, Comment, Computation of Time.

Homicide Detective Pat Moffatt of the Pittsburgh Police Department testified regarding the efforts made by the police to locate and arrest Johnson. Detective Moffatt testified multiple addresses for Johnson were obtained using a variety of computer databases. The police visited each of these locations multiple times. The Western Pennsylvania Fugitive Task Force, a group consisting of elements of the U.S. Marshal Service, Allegheny County Sheriffs, and various local municipal police officers, was enlisted to help locate Johnson. Additionally, the National Crime Information Center (NCIC) database was accessed. On cross-examination, Detective Moffat testified he did not check with any utility company, post office or bail agency to locate Johnson. After considering Detective Moffatt's testimony, the trial court found the Commonwealth had exercised due diligence in attempting to locate Johnson and excluded the 20 days from the filing of the written complaint to Johnson's arrest. This exclusion of time extended the "run date" from August 28, 2013 to September 17, 2013. Because Johnson's trial was started on September 5, 2013, there was no Rule 600 violation.

The Commonwealth was not required to demonstrate perfect vigilance, rather that it put forward reasonable effort in locating Johnson. Our review of the certified record leads us to conclude the trial court did not abuse its discretion in determining the Commonwealth fulfilled its duty in this regard. Accordingly, Johnson is not entitled to relief on this issue.

In light of the foregoing analysis, we affirm Johnson's judgment of sentence.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2015